**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Julian J. Pardini, Esq. (SB# 133878)
    Email: julian.pardini@lewisbrisbois.com
45 Fremont Street, Suite 3000
San Francisco, California 94105
Tel:   415.362.2580
Fax:   415.434.0882

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Stephen V. Kovarik, Esq. (SB# 184656)
    E-Mail: Stephen.Kovarik@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Tel:   213.580.7971
Fax:   213.250.7900

Attorneys for Plaintiff
NATIONAL GUARDIAN LIFE INSURANCE COMPANY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL GUARDIAN LIFE INSURANCE COMPANY,<br><br>           Plaintiff,<br><br>     v.<br><br>MICHAEL J. ELWELL, and DOES 1-10.<br><br>           Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF (VOIDANCE OF INSURANCE POLICY, AND RECOVERY OF POLICY BENEFITS PAID)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff NATIONAL GUARDIAN LIFE INSURANCE COMPANY (hereinafter, "NATIONAL GUARDIAN") hereby alleges as follows:

### GENERAL ALLEGATIONS

1.     At all times relevant herein, NATIONAL GUARDIAN was, and now is, a corporation organized under the laws of the State of Wisconsin, licensed to do business, and doing business as an insurer in the State of California.

2.     NATIONAL GUARDIAN is informed and believes and on that basis alleges that Defendant MICHAEL J. ELWELL (hereinafter, "ELWELL") is an

144264991.3

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

1    individual living at all relevant times in Huntington Beach, California.

2        3.    **JURISDICTION**:  This Court has diversity jurisdiction by virtue of 28

3    U.S.C. section 1332.  This is a civil action between citizens of different states wherein

4    the matter in controversy exceeds $75,000, exclusive of interest and costs.

5        4.    **VENUE**:  Venue is properly placed in this Court under 28 U.S.C. section

6    1391 because the insurance policy issued by NATIONAL GUARDIAN described

7    herein was delivered to the insured and the premiums were paid in this judicial district,

8    and because a substantial part of the events and omissions giving rise to this claim as

9    described herein occurred in this judicial district.

10        5.    NATIONAL GUARDIAN does not know the true names and capacities,

11    whether individual, corporate, association, or otherwise, of the defendants Does 1

12    through 10, inclusive, and therefore sues such defendants by fictitious names.  When

13    the true names and capacities of the defendants sued herein as Doe 1 through 10,

14    inclusive, have been ascertained, NATIONAL GUARDIAN will seek leave to amend

15    this Complaint to insert said names and capacities.  NATIONAL GUARDIAN is

16    informed and believes, and thereon alleges, that each of these fictitiously named

17    defendants has an interest in the policy of insurance which is the subject of the instant

18    lawsuit.

19        6.    In December, 2021, ELWELL applied to NATIONAL GUARDIAN for a

20    comprehensive long term care insurance policy and the application was approved.  As

21    part of the application process, ELWELL filled out the Application for Individual

22    Nursing Facility and Residential Care Facility Only or Comprehensive Long Term Care

23    Insurance ("Application") requesting certain background and medical information

24    which he signed under the following advisement:

25        6. I, the undersigned applicant, acknowledge and represent that I
       have read the complete application. I the applicant, represent to
26       the best of my knowledge and belief, that the answers contained in
       this application are true, complete and correctly recorded.
27

28



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Under his signature can be found this warning:

> **CAUTION: If your answers on this application are misstated or untrue, National Guardian Life Insurance Company may have the right to deny benefits or rescind your coverage.**

A true and correct copy of the Application is attached as **Exhibit A**.

7.    In addition to responding to the questions asked on that form application, ELWELL also provided to NATIONAL GUARDIAN a recorded statement during which he answered certain specific questions about his medical history and then current status.  Unbenownst to NATIONAL GUARDIAN, a number of his responses to those questions were demonstrably false.

8.    In reliance on the information ELWELL provided in the application and during the application process, NATIONAL GUARDIAN issued to ELWELL a "Comprehensive Long Term Care Insurance Policy," policy no. 2000012932 (the "Policy"), on February 2, 2022, and the Policy was to remain in effect so long as ELWELL paid the premiums.  A true and correct copy of the Policy is attached as **Exhibit B**.

9.    The Policy contained an Incontestability provision which reads:

> If this policy has been in force for less than six (6) months, upon a showing of misrepresentation that is material to the acceptance of coverage, We may rescind this Policy or deny an otherwise valid claim on this Policy.
>
> If this policy has been in force for at least six (6) months, but less than two (2) years, and if We can show the misrepresentation is both material to the acceptance of coverage and that it pertains to the condition for which benefits are sought, We may rescind this Policy or deny an otherwise valid claim on this Policy.
>
> After this Policy has been in for two (2) years it is not contestable upon the grounds of misrepresentation alone. After two (2) years, this Policy may be contested only upon a showing that You knowingly and intentionally misrepresented relevant facts relating to Your health.

(Exhibit B, pp. 16-17.)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

10.     On December 8, 2023, ELWELL gave notice to NATIONAL GUARDIAN of his claim for long-term care.  On January 4, 2024, he signed a "Claim for Long Term Care Claimant's Statement," which was received by NATIONAL GUARDIAN on January 9, 2024, stating that he described his condition as "cognitive imparement (sic) caused by Alzheimer disease," and he required respite care and flex day care, but he did not need assistance with bathing, dressing, eating, toileting, or transferring.  A true and correct copy of ELWELL's Claim for Long Term Care Claimant's Statement is attached as **Exhibit C**.

11.     On August 7, 2024, NATIONAL GUARDIAN received a report from neuropsychologist Lori Folk-Barron, who had reviewed ELWELL's medical records that had to date been received by NATIONAL GUARDIAN  and concluded:

> The insured's cognitive impairments appear to be at least of moderate severity, and his reported behaviors since February 2024 raise concerns about his safety and the safety of others in the context of his dementia. Thus, there is reasonable support for the presence of Severe Cognitive Impairment requiring Substantial Supervision as of 2/16/24 and ongoing.

A true and correct copy of Lori Folk-Barron's August 7, 2024, report following her review of ELWELL's medical records is attached as **Exhibit D**.

12.     Based on the information provided by ELWELL, NATIONAL GUARDIAN advised ELWELL that he satisfied the eligibility requirements of the policy in a letter dated August 22, 2024. A true and correct copy of NATIONAL GUARDIAN's August 22, 2024, letter advising ELWELL that he satisfied the eligibility requirements of the policy  is attached as **Exhibit E**.

## <u>FIRST CAUSE OF ACTION</u>

### (Declaratory Relief re: NATIONAL GUARDIAN's

### Right to Void and Rescind the Policy)

13.     NATIONAL GUARDIAN incorporates the allegations in paragraphs 1-12 by this reference as though set forth fully herein.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

14.     This is a declaratory relief action pursuant to 28 U.S.C. section 2201 and 28 U.S.C. section 2202, for the purpose of determining a question of actual controversy between the parties concerning their rights and duties under a written contract of insurance.

15.     An actual controversy has arisen and now exists between NATIONAL GUARDIAN, on the one hand, and ELWELL on the other hand, regarding NATIONAL GUARDIAN's right to void and rescind the Policy.  NATIONAL GUARDIAN contends that ELWELL intentionally misrepresented material facts during the application process, that he knew of the falsity of his misrepresentations, that he made said misrepresentations with the intent to deceive NATIONAL GUARDIAN, that he did deceive NATIONAL GUARDIAN such that NATIONAL GUARDIAN has or will pay Policy benefits to ELWELL to which he was not entitled, and that his actions constituted a breach of the terms, conditions, and provisions of the Policy.

16.     NATIONAL GUARDIAN further contends that it is entitled, in light of ELWELL's fraudulent conduct, to void and rescind the Policy in its entirety.

17.     NATIONAL GUARDIAN is informed and believes and on that basis alleges that ELWELL disputes NATIONAL GUARDIAN's contentions, and that he further contends that he is entitled to further policy benefits beyond those that NATIONAL GUARDIAN has or will pay.

18.     NATIONAL GUARDIAN has no adequate remedy at law and desires a judicial determination of the respective rights, duties, and interests of the parties in accord with the contentions set forth herein.  A prompt adjudication of this controversy is necessary and proper at this time so that the parties may ascertain their respective rights, duties, and interests under the Policy for ELWELL's claim, including a determination that the Policy allows NATIONAL GUARDIAN to void and rescind the Policy in response to ELWELL's intentional misrepresentations of material facts during the application process.

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## SECOND CAUSE OF ACTION

### (Declaratory Relief re: NATIONAL GUARDIAN's

### Right to Recover Policy Benefits Paid)

19.   NATIONAL GUARDIAN incorporates the allegations in paragraphs 1-18 by this reference as though set forth fully herein.

20.   An actual controversy has arisen and now exists between NATIONAL GUARDIAN, on the one hand, and ELWELL on the other hand, regarding NATIONAL GUARDIAN's right to recover Policy benefits that may be paid with respect to ELWELL's claim.  NATIONAL GUARDIAN contends that ELWELL intentionally misrepresented material facts during the application process; that he knew of the falsity of those misrepresentations; that he made the misrepresentations with the intent to deceive NATIONAL GUARDIAN; that he did deceive NATIONAL GUARDIAN such that NATIONAL GUARDIAN has or will pay Policy benefits to which ELWELL was not entitled; and that ELWELL's actions constituted a breach of the terms, conditions, and provisions of the Policy.

21.   NATIONAL GUARDIAN further contends that had the misrepresentations of ELWELL been discovered prior to certain of NATIONAL GUARDIAN's payments of Policy benefits, then NATIONAL GUARDIAN would not have issued the Policy or would have voided and rescinded the Policy on that basis.

22.   NATIONAL GUARDIAN is informed and believes and on that basis alleges that ELWELL  disputes NATIONAL GUARDIAN's contentions, and that he further contends that ELWELL was entitled to receive any Policy benefits already paid and that ELWELL is entitled to further policy benefits beyond those that NATIONAL GUARDIAN has already paid or will pay before this lawsuit is resolved.

23.   NATIONAL GUARDIAN has no adequate remedy at law and desires a judicial determination of the respective rights, duties, and interests of the parties in accord with the contentions set forth herein.  A prompt adjudication of this controversy is necessary and proper at this time so that the parties may ascertain their respective

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

rights, duties, and interests under the Policy for ELWELL's claim, including a determination that NATIONAL GUARDIAN may recover any Policy benefits paid to ELWELL.

**WHEREFORE,** NATIONAL GUARDIAN prays for judgment against Defendants, and each of them, as follows:

1. That the Court issue a declaration that NATIONAL GUARDIAN is entitled to void and rescind the Policy as a result of the misrepresentations by ELWELL of material facts during the application process;

2. That the Court issue a declaration that ELWELL must reimburse to NATIONAL GUARDIAN any Policy benefits paid to date;

3. That the Court award NATIONAL GUARDIAN damages to include, in addition to the monies already paid to ELWELL as benefits under the Policy, the costs and fees, including attorneys' fees, incurred by NATIONAL GUARDIAN in its investigation of ELWELL's claim;

4. That the Court award prejudgment interest to NATIONAL GUARDIAN;

5. That NATIONAL GUARDIAN be awarded costs and reasonable attorneys' fees to be determined by the Court; and

6. That the Court grant such further relief to NATIONAL GUARDIAN as the Court may deem just and proper.

DATED:  September 18, 2024      JULIAN J. PARDINI
                                STEPHEN V. KOVARIK
                                LEWIS BRISBOIS BISGAARD & SMITH LLP


                                By:  _____/s/ Julian J. Pardini_____
                                     JULIAN J. PARDINI
                                     Attorneys for Plaintiff NATIONAL
                                     GUARDIAN LIFE INSURANCE
                                     COMPANY

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

144264991.3

7

COMPLAINT FOR DECLARATORY RELIEF (VOIDANCE OF INSURANCE POLICY,
AND RECOVERY OF POLICY BENEFITS PAID)

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff, NATIONAL GUARDIAN LIFE INSURANCE COMPANY,

3  demands a jury trial in this matter.

4  DATED:  September 18, 2024        JULIAN J. PARDINI
                                     STEPHEN V. KOVARIK
5                                    LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7                                    By:  _____*/s/ Julian J. Pardini*_____
8                                          JULIAN J. PARDINI
                                           Attorneys for Plaintiff NATIONAL
9                                          GUARDIAN LIFE INSURANCE
10                                         COMPANY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

144264991.3

COMPLAINT FOR DECLARATORY RELIEF (VOIDANCE OF INSURANCE POLICY,
AND RECOVERY OF POLICY BENEFITS PAID)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**National Guardian Life Insurance Company**
Home Office: Madison, WI
Long Term Care Administrative Office:
LifeCare Assurance Company;
PO Box 4243, Woodland Hills, CA 91365-4243
888.505.2332 • Fax 818.887.4595
www.ngl-essentialltc.com

**APPLICATION FOR INDIVIDUAL NURSING FACILITY AND RESIDENTIAL CARE FACILITY ONLY OR COMPREHENSIVE LONG TERM CARE INSURANCE**

2021 DEC 30   AM 9: 03

(PLEASE PRINT)

NLTC100A-CA

This contract for long-term care insurance is intended to be a federally qualified long-term care insurance contract and may qualify you for federal and state tax benefits.

THIS POLICY IS AN APPROVED LONG TERM CARE INSURANCE POLICY UNDER CALIFORNIA LAW AND REGULATIONS. HOWEVER, THE BENEFITS PAYABLE BY THIS POLICY WILL NOT QUALIFY FOR MEDI-CAL ASSET PROTECTION UNDER THE CALIFORNIA PARTNERSHIP FOR LONG TERM CARE. FOR INFORMATION ABOUT POLICIES AND CERTIFICATES QUALIFYING UNDER THE CALIFORNIA PARTNERSHIP FOR LONG TERM CARE, CALL THE HEALTH INSURANCE COUNSELING AND ADVOCACY PROGRAM AT THE TOLL-FREE NUMBER, 1-800-434-0222.

## APPLICANT INFORMATION

| Applicant (First Name, Middle Initial, Last Name) Victoria K Elwell | | Sex ◯ M ⊘ F | Birthplace (City, State) Cleveland, Ohio |
|---|---|---|---|
| Social Security Number -6723 | Height 5' 6" | Weight 155 | Birthdate 02/26/ | Age as of Nearest Birthday 66 |
| Residence Address (Street, City, State, Zip) H.B. Ca. 92646 | | Phone Work: ( 949 ) 705-1134 Home: ( 714 ) 849-9171 |
| Billing Address — If different (Name, Street, City, State, Zip) | | Other: ( 714 ) 815-6103 Acceptable times to call: ◯ Day   ⊘ Evening   ⊘ Sat/Sun |

## HEALTH QUESTIONS

1.  Have you ever been diagnosed by a medical professional for:

| | | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|---|
| a. | Alzheimer's Disease | ◯ | ⊘ | p. | Multiple Sclerosis | ◯ | ⊘ |
| b. | Amyotrophic Lateral Sclerosis | ◯ | ⊘ | q. | Muscular Dystrophy | ◯ | ⊘ |
| c. | Bipolar Disorder | ◯ | ⊘ | r. | Myasthenia Gravis | ◯ | ⊘ |
| d. | Cardiomyopathy or Congestive Heart Failure | ◯ | ⊘ | s. | Organic Brain Syndrome | ◯ | ⊘ |
| e. | Cerebral Atrophy | ◯ | ⊘ | t. | Paralysis | ◯ | ⊘ |
| f. | Cerebral Palsy | ◯ | ⊘ | u. | Parkinson's Disease | ◯ | ⊘ |
| g. | Cystic Fibrosis | ◯ | ⊘ | v. | Retinitis Pigmentosa | ◯ | ⊘ |
| h. | Dementia or Senility | ◯ | ⊘ | w. | Schizophrenia | ◯ | ⊘ |
| i. | Huntington's Disease | ◯ | ⊘ | x. | Scleroderma | ◯ | ⊘ |
| j. | Kidney Disease requiring dialysis | ◯ | ⊘ | y. | Spinal Cord Injury | ◯ | ⊘ |
| k. | Liver Cirrhosis | ◯ | ⊘ | z. | Stroke/ Cerebral Vascular Accident (CVA) | ◯ | ⊘ |
| l. | Memory Loss | ◯ | ⊘ | aa. | Systemic Lupus | ◯ | ⊘ |
| m. | Mental Retardation | ◯ | ⊘ | bb. | Transient Ischemic Attack (TIA) | ◯ | ⊘ |
| n. | Metastatic Cancer — Cancer that has Spread from its original location | ◯ | ⊘ | cc. | Type 1 Diabetes (Insulin Dependent) | ◯ | ⊘ |
| o. | Multiple Myeloma | ◯ | ⊘ | | | | |

Exhibit A - page 08                          *04000149*

## HEALTH QUESTIONS (continued)

**2. Please answer the following questions:**

a. Do you require mechanical or human assistance or supervision in any of the following activities:

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| eating | ○ | ⊘ | walking | ○ | ⊘ |
| dressing | ○ | ⊘ | maintaining continence | ○ | ⊘ |
| toileting | ○ | ⊘ | bathing | ○ | ⊘ |
| transferring from bed to chair | ○ | ⊘ | | | |

b. Do you currently use one of the following medical devices:

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| wheelchair | ○ | ⊘ | crutches | ○ | ⊘ |
| walker | ○ | ⊘ | oxygen | ○ | ⊘ |
| hospital bed | ○ | ⊘ | stairlift | ○ | ⊘ |
| quad cane | ○ | ⊘ | dialysis | ○ | ⊘ |

| | Yes | No |
|---|---|---|
| c. Do you currently reside in, have you been advised to enter, or are you planning to enter a nursing home, residential care facility, rehabilitation facility or other custodial facility, or are you currently receiving home health care services or attending adult day care? | ○ | ⊘ |
| d. Have you been diagnosed or treated by a member of the medical profession for AIDS (Acquired Immune Deficiency Syndrome) or AIDS Related Complex? | ○ | ⊘ |

PLEASE NOTE BEFORE YOU CONTINUE WITH THIS APPLICATION: If you answered "YES" to any part of Question 1 or to Question 2, we suggest that you do not submit this application. If you answered "NO" to every part of Question 1 and to Question 2, please continue.

Exhibit A - page 09                    *04000151*

## HEALTH QUESTIONS (continued)

**3. Within the last 10 years, have you received a diagnosis or medical treatment by a member of the medical profession for any of the following conditions?**

Please indicate each that applies:

|  |  | Yes | No |  | Yes | No |
|---|---|:---:|:---:|---|:---:|:---:|
| **a.** | **Circulatory Disorders:** |  |  |  |  |  |
|  | Amaurosis Fugax | ○ | ⊘ | High Blood Pressure | ○ | ⊘ |
|  | Heart Arrhythmias | ○ | ⊘ | Peripheral Vascular Disease | ○ | ⊘ |
|  | Valvular Disease | ○ | ⊘ | Skin Ulcers | ○ | ⊘ |
|  | Aneurysm | ○ | ⊘ | Amputation | ○ | ⊘ |
|  | Coronary Artery Disease | ○ | ⊘ | Carotid Artery Disease | ○ | ⊘ |
|  | Coronary Bypass Surgery | ○ | ⊘ | Embolisms | ○ | ⊘ |
|  | Coronary Artery Stenting | ○ | ⊘ |  |  |  |
| **b.** | **Endocrine and Pituitary Disorders:** |  |  |  |  |  |
|  | Diabetes | ○ | ⊘ | Pancreatitis | ○ | ⊘ |
|  | Addison's Disease | ○ | ⊘ | Cushing's Disease | ○ | ⊘ |
| **c.** | **Cancers / Tumors:** |  |  |  |  |  |
|  | Bladder | ○ | ⊘ | Prostate | ○ | ⊘ |
|  | Bone | ○ | ⊘ | Stomach | ○ | ⊘ |
|  | Brain | ○ | ⊘ | Throat | ○ | ⊘ |
|  | Breast | ○ | ⊘ | Thyroid | ○ | ⊘ |
|  | Colon | ○ | ⊘ | Uterine | ○ | ⊘ |
|  | Esophageal | ○ | ⊘ | Leukemia | ○ | ⊘ |
|  | Kidney | ○ | ⊘ | Lymphoma | ○ | ⊘ |
|  | Liver | ○ | ⊘ | Melanoma | ○ | ⊘ |
|  | Lung | ○ | ⊘ | Meningioma | ○ | ⊘ |
|  | Mouth | ○ | ⊘ | Squamous Cell | ○ | ⊘ |
|  | Ovarian | ○ | ⊘ | Sarcoma | ○ | ⊘ |
|  | Pancreas | ○ | ⊘ |  |  |  |
| **d.** | **Genitourinary Disorders:** |  |  |  |  |  |
|  | Renal Insufficiency | ○ | ⊘ | Prostate Disorders | ○ | ⊘ |
|  | Kidney Failure | ○ | ⊘ | Bladder Disorders | ○ | ⊘ |
|  | Incontinence | ○ | ⊘ |  |  |  |
| **e.** | **Gastrointestinal Disorders:** |  |  |  |  |  |
|  | Hepatitis | ○ | ⊘ | Crohn's Disease | ○ | ⊘ |
|  | Ulcerative Colitis | ○ | ⊘ | Liver Disorders | ○ | ⊘ |
| **f.** | **Neurological Disorders:** |  |  |  |  |  |
|  | Mental Illness | ○ | ⊘ | Syncope | ○ | ⊘ |
|  | Depression | ○ | ⊘ | Anxiety | ⊘ | ○ |
|  | Seizures | ○ | ⊘ | Chronic Fatigue Syndrome | ○ | ⊘ |
|  | Tremors | ○ | ⊘ | Post-Polio Syndrome | ○ | ⊘ |
|  | Neuropathy | ○ | ⊘ |  |  |  |
| **g.** | **Blood Disorders:** |  |  |  |  |  |
|  | Anemia | ○ | ⊘ | Hemochromatosis | ○ | ⊘ |
|  | Polycythemia Vera | ○ | ⊘ | Immune System Disorder | ○ | ⊘ |
|  | Thrombocytopenia | ○ | ⊘ |  |  |  |

Exhibit A - page 10                    *04000153*

## HEALTH QUESTIONS (continued)

3. **Within the last 10 years, have you received a diagnosis or medical treatment by a member of the medical profession for any of the following conditions?**

   Please indicate each that applies:

|  | Yes | No |  | Yes | No |
|---|:---:|:---:|---|:---:|:---:|
| **h. Musculoskeletal Disorders:** | | | | | |
| Osteoporosis | ○ | ⊘ | Scoliosis | ○ | ⊘ |
| Arthritis | ○ | ⊘ | Spinal Stenosis | ○ | ⊘ |
| Rheumatoid Arthritis | ○ | ⊘ | Herniated Disc | ○ | ⊘ |
| Osteoarthritis | ○ | ⊘ | Polymyalgia Rheumatica | ○ | ⊘ |
| Fractures | ○ | ⊘ | Osteopenia | ○ | ⊘ |
| Fibromyalgia | ○ | ⊘ | Paralysis | ○ | ⊘ |
| Degenerative Joint Disease | ○ | ⊘ | Injury due to Falls or Imbalance | ○ | ⊘ |
| **i. Respiratory Disorders:** | | | | | |
| Emphysema | ○ | ⊘ | Asbestosis | ○ | ⊘ |
| Bronchitis | ○ | ⊘ | Sarcoidosis | ○ | ⊘ |
| Asthma | ○ | ⊘ | Chronic Obstructive Pulmonary Disease | ○ | ⊘ |
| Bronchiectasis | ○ | ⊘ | | | |
| **j. Eye and Ear Disorders:** | | | | | |
| Macular Degeneration | ○ | ⊘ | Labyrinthitis | ○ | ⊘ |
| Glaucoma | ○ | ⊘ | Meniere's / Vertigo | ○ | ⊘ |
| **k. Substance Abuse:** | | | | | |
| Alcoholism | ○ | ⊘ | Illicit Drug Use | ○ | ⊘ |
| Drug Dependency | ○ | ⊘ | | | |

4. **Provide the name, address and phone number of your primary care physician (PCP) if you have consulted your physician within the last 5 years.**

   Karen Sun Integrative Welless 4 Hughes Sutie 150 Irvinr Ca. (949) 768-6780

   Date last seen: 12/6/2021     Reason for visit: Bio-Identical Hormones and vitamins

5. **During the past 2 years, have you taken prescription medication? If "Yes," list all medications and the name(s) of the prescribing physician(s):**

   Vyvanse 20 mg and Lexapro 10 mg - for ADD and Anxitey (due to ADD) Pacific Neuropsychiatric Specialist -Brandon Stutz

   Valtrex 500mg - Cole Fulwider

   Progesterone 50mg - Karen Sun

## HEALTH QUESTIONS (continued)

6. During the past 2 years, have you?

|  | Yes | No |
|---|---|---|
| a. used tobacco products (cigarettes, pipe, cigar, or chewing tobacco)? | ○ | ⊘ |
| b. received disability benefits? | ○ | ⊘ |
| c. been advised to have any surgery or diagnostic test that has not yet been performed? | ○ | ⊘ |
| d. had an application for Life, Disability Income or Long-Term Care insurance declined, modified or rated? | ○ | ⊘ |

If "Yes," please provide reason for the adverse underwriting decision:

_____

7. Have any of your family members (mother, father, siblings) been diagnosed or treated by a member of the medical profession for any of the following:           ** Applicant was adopted **

| | Yes | No | | Yes | No | | Yes | No |
|---|---|---|---|---|---|---|---|---|
| Alzheimer's Disease | ○ | ○ | Huntington's Disease | ○ | ○ | Amyotrophic Lateral Sclerosis (Lou Gehrig's Disease) | ○ | ○ |
| Dementia | ○ | ○ | Heart Disease | ○ | ○ | | | |
| Parkinson's Disease | ○ | ○ | Stroke | ○ | ○ | Polycystic Kidney Disease | ○ | ○ |

## ADDITIONAL QUESTIONS

|  | Yes | No |
|---|---|---|
| 8. Are you actively at work? | ⊘ | ○ |
| 9. Occupation: Data Governance Specialist          If retired, date of retirement: _____ | | |
| 10. Do you live with a spouse, family member or other person? | ⊘ | ○ |

## INFORMATION ABOUT YOUR INSURANCE COVERAGE

|  | Yes | No |
|---|---|---|
| 11. Are you covered by Medi-Cal? (This does not mean Medicare) | ○ | ⊘ |
| 12. Do you collect benefits from Social Security Disability Insurance (SSDI)? | ○ | ⊘ |
| 13. Do you have a policy, certificate or application with this or any other company providing long term care insurance (including a health care service contract or health maintenance organization contract)? | ○ | ⊘ |
| 14. Did you have another long term care insurance policy or certificate in force during the last 12 months? | ○ | ⊘ |
| If that policy lapsed, when did it lapse? _____ | | |
| 15. Do you intend to replace any of your long term care, medical or health insurance coverage with this policy? | ○ | ⊘ |

If you answered "Yes" to any of Questions 13 – 15, provide full details below and complete required replacement forms.

| Ques. No. | Company | Issue Date | Type | Daily Benefit | Paid-to-Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Exhibit A - page 12                    *04000157*

**COMPLETE THIS PAGE FOR JOINT COVERAGE APPLICANT ONLY**

## APPLICANT INFORMATION

| Applicant (First Name, Middle Initial, Last Name) | | Sex | Birthplace (City, State) |
|---|---|---|---|
| Michael J Elwell | | ⊘ M  ○ F | Twin Falls Idaho |

| Social Security Number | Height | Weight | Birthdate | Age as of Nearest Birthday |
|---|---|---|---|---|
| ▉-6299 | 5' 8" | 185 | 07/01/▉ | 59 |

Residence Address (Street, City, State, Zip)
▉ H.B. Ca. 92646

Billing Address — If different (Name, Street, City, State, Zip)

Phone
Work: (      )
Home: ( 714 ) 849-9171
Other: ( 714 ) 335-8581
Acceptable times to call:
⊘ Day      ⊘ Evening      ⊘ Sat/Sun

## HEALTH QUESTIONS

1. **Have you ever been diagnosed by a medical professional for:**

| | | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|---|
| a. | Alzheimer's Disease | ○ | ⊘ | p. | Multiple Sclerosis | ○ | ⊘ |
| b. | Amyotrophic Lateral Sclerosis | ○ | ⊘ | q. | Muscular Dystrophy | ○ | ⊘ |
| c. | Bipolar Disorder | ○ | ⊘ | r. | Myasthenia Gravis | ○ | ⊘ |
| d. | Cardiomyopathy or Congestive Heart Failure | ○ | ⊘ | s. | Organic Brain Syndrome | ○ | ⊘ |
| e. | Cerebral Atrophy | ○ | ⊘ | t. | Paralysis | ○ | ⊘ |
| f. | Cerebral Palsy | ○ | ⊘ | u. | Parkinson's Disease | ○ | ⊘ |
| g. | Cystic Fibrosis | ○ | ⊘ | v. | Retinitis Pigmentosa | ○ | ⊘ |
| h. | Dementia or Senility | ○ | ⊘ | w. | Schizophrenia | ○ | ⊘ |
| i. | Huntington's Disease | ○ | ⊘ | x. | Scleroderma | ○ | ⊘ |
| j. | Kidney Disease requiring dialysis | ○ | ⊘ | y. | Spinal Cord Injury | ○ | ⊘ |
| k. | Liver Cirrhosis | ○ | ⊘ | z. | Stroke/ Cerebral Vascular Accident (CVA) | ○ | ⊘ |
| l. | Memory Loss | ○ | ⊘ | aa. | Systemic Lupus | ○ | ⊘ |
| m. | Mental Retardation | ○ | ⊘ | bb. | Transient Ischemic Attack (TIA) | ○ | ⊘ |
| n. | Metastatic Cancer – Cancer that has Spread from its original location | ○ | ⊘ | cc. | Type 1 Diabetes (Insulin Dependent) | ○ | ⊘ |
| o. | Multiple Myeloma | ○ | ⊘ | | | | |

Exhibit A - page 13

*04000159*

## HEALTH QUESTIONS (continued)

2. **Please answer the following questions:**

   a. Do you require mechanical or human assistance or supervision in any of the following activities:

   | | Yes | No | | Yes | No |
   |---|---|---|---|---|---|
   | eating | ○ | ⊘ | walking | ○ | ⊘ |
   | dressing | ○ | ⊘ | maintaining continence | ○ | ⊘ |
   | toileting | ○ | ⊘ | bathing | ○ | ⊘ |
   | transferring from bed to chair | ○ | ⊘ | | | |

   b. Do you currently use one of the following medical devices:

   | | Yes | No | | Yes | No |
   |---|---|---|---|---|---|
   | wheelchair | ○ | ⊘ | crutches | ○ | ⊘ |
   | walker | ○ | ⊘ | oxygen | ○ | ⊘ |
   | hospital bed | ○ | ⊘ | stairlift | ○ | ⊘ |
   | quad cane | ○ | ⊘ | dialysis | ○ | ⊘ |

   c. Do you currently reside in, have you been advised to enter, or are you planning to enter a nursing home, residential care facility, rehabilitation facility or other custodial facility, or are you currently receiving home health care services or attending adult day care? ○ Yes ⊘ No

   d. Have you been diagnosed or treated by a member of the medical profession for AIDS (Acquired Immune Deficiency Syndrome) or AIDS Related Complex? ○ ⊘

**PLEASE NOTE BEFORE YOU CONTINUE WITH THIS APPLICATION: If you answered "YES" to any part of Question 1 or to Question 2, we suggest that you do not submit this application. If you answered "NO" to every part of Question 1 and to Question 2, please continue.**

Exhibit A - page 14                                    *04000161*

## HEALTH QUESTIONS (continued)

**3.** Within the last 10 years, have you received a diagnosis or medical treatment by a member of the medical profession for any of the following conditions?

Please indicate each that applies:

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| **a. Circulatory Disorders:** | | | | | |
| Amaurosis Fugax | ○ | ⊘ | High Blood Pressure | ○ | ⊘ |
| Heart Arrhythmias | ○ | ⊘ | Peripheral Vascular Disease | ○ | ⊘ |
| Valvular Disease | ○ | ⊘ | Skin Ulcers | ○ | ⊘ |
| Aneurysm | ○ | ⊘ | Amputation | ○ | ⊘ |
| Coronary Artery Disease | ○ | ⊘ | Carotid Artery Disease | ○ | ⊘ |
| Coronary Bypass Surgery | ○ | ⊘ | Embolisms | ○ | ⊘ |
| Coronary Artery Stenting | ○ | ⊘ | | | |
| **b. Endocrine and Pituitary Disorders:** | | | | | |
| Diabetes | ○ | ⊘ | Pancreatitis | ○ | ⊘ |
| Addison's Disease | ○ | ⊘ | Cushing's Disease | ○ | ⊘ |
| **c. Cancers / Tumors:** | | | | | |
| Bladder | ○ | ⊘ | Prostate | ○ | ⊘ |
| Bone | ○ | ⊘ | Stomach | ○ | ⊘ |
| Brain | ○ | ⊘ | Throat | ○ | ⊘ |
| Breast | ○ | ⊘ | Thyroid | ○ | ⊘ |
| Colon | ○ | ⊘ | Uterine | ○ | ⊘ |
| Esophageal | ○ | ⊘ | Leukemia | ○ | ⊘ |
| Kidney | ○ | ⊘ | Lymphoma | ○ | ⊘ |
| Liver | ○ | ⊘ | Melanoma | ○ | ⊘ |
| Lung | ○ | ⊘ | Meningioma | ○ | ⊘ |
| Mouth | ○ | ⊘ | Squamous Cell | ○ | ⊘ |
| Ovarian | ○ | ⊘ | Sarcoma | ○ | ⊘ |
| Pancreas | ○ | ⊘ | | | |
| **d. Genitourinary Disorders:** | | | | | |
| Renal Insufficiency | ○ | ⊘ | Prostate Disorders | ○ | ⊘ |
| Kidney Failure | ○ | ⊘ | Bladder Disorders | ○ | ⊘ |
| Incontinence | ○ | ○ | | | |
| **e. Gastrointestinal Disorders:** | | | | | |
| Hepatitis | ○ | ⊘ | Crohn's Disease | ○ | ⊘ |
| Ulcerative Colitis | ○ | ⊘ | Liver Disorders | ○ | ⊗ |
| **f. Neurological Disorders:** | | | | | |
| Mental Illness | ○ | ⊘ | Syncope | ○ | ⊘ |
| Depression | ○ | ⊘ | Anxiety | ○ | ⊘ |
| Seizures | ○ | ⊘ | Chronic Fatigue Syndrome | ○ | ⊘ |
| Tremors | ○ | ⊘ | Post-Polio Syndrome | ○ | ⊘ |
| Neuropathy | ○ | ⊘ | | | |
| **g. Blood Disorders:** | | | | | |
| Anemia | ○ | ⊘ | Hemochromatosis | ○ | ⊘ |
| Polycythemia Vera | ○ | ⊘ | Immune System Disorder | ○ | ⊘ |
| Thrombocytopenia | ○ | ⊘ | | | |

Exhibit A - page 15

*04000163*

## HEALTH QUESTIONS (continued)

**3.** Within the last 10 years, have you received a diagnosis or medical treatment by a member of the medical profession for any of the following conditions?

Please indicate each that applies:

|  |  | Yes | No |  | Yes | No |
|---|---|---|---|---|---|---|
| **h.** | **Musculoskeletal Disorders:** | | | | | |
| | Osteoporosis | ○ | ⊘ | Scoliosis | ○ | ⊘ |
| | Arthritis | ○ | ⊘ | Spinal Stenosis | ○ | ⊘ |
| | Rheumatoid Arthritis | ○ | ⊘ | Herniated Disc | ○ | ⊘ |
| | Osteoarthritis | ○ | ⊘ | Polymyalgia Rheumatica | ○ | ⊘ |
| | Fractures | ○ | ⊘ | Osteopenia | ○ | ⊘ |
| | Fibromyalgia | ○ | ⊘ | Paralysis | ○ | ⊘ |
| | Degenerative Joint Disease | ○ | ⊘ | Injury due to Falls or Imbalance | ○ | ⊘ |
| **i.** | **Respiratory Disorders:** | | | | | |
| | Emphysema | ○ | ⊘ | Asbestosis | ○ | ⊘ |
| | Bronchitis | ○ | ⊘ | Sarcoidosis | ○ | ⊘ |
| | Asthma | ○ | ⊘ | Chronic Obstructive Pulmonary Disease | ○ | ⊘ |
| | Bronchiectasis | ○ | ⊘ | | | |
| **j.** | **Eye and Ear Disorders:** | | | | | |
| | Macular Degeneration | ○ | ⊘ | Labyrinthitis | ○ | ⊘ |
| | Glaucoma | ○ | ⊘ | Meniere's / Vertigo | ○ | ⊘ |
| **k.** | **Substance Abuse:** | | | | | |
| | Alcoholism | ○ | ⊘ | Illicit Drug Use | ○ | ⊘ |
| | Drug Dependency | ○ | ⊘ | | | |

**4.** Provide the name, address and phone number of your primary care physician (PCP) if you have consulted your physician within the last 5 years.

Memorial Prompt Care 9122 Adams Ave H.B Ca. Scott Newman 07

Date last seen: 07/16/2018                    Reason for visit: Viagra 100mg

**5.** During the past 2 years, have you taken prescription medication? If "Yes," list all medications and the name(s) of the prescribing physician(s):

Only listed above

## HEALTH QUESTIONS (continued)

**6. During the past 2 years, have you:**

| | Yes | No |
|---|---|---|
| a. used tobacco products (cigarettes, pipe, cigar, or chewing tobacco)? | ○ | ⊘ |
| b. received disability benefits? | ○ | ⊘ |
| c. been advised to have any surgery or diagnostic test that has not yet been performed? | ○ | ⊘ |
| d. had an application for Life, Disability Income or Long-Term Care insurance declined, modified or rated? | ○ | ⊘ |

If "Yes," please provide reason for the adverse underwriting decision:

_____

**7. Have any of your family members (mother, father, siblings) been diagnosed or treated by a member of the medical profession for any of the following:**

| | Yes | No | | Yes | No | | Yes | No |
|---|---|---|---|---|---|---|---|---|
| Alzheimer's Disease | ⊘ | ○ | Huntington's Disease | ○ | ⊘ | Amyotrophic Lateral Sclerosis | ○ | ⊘ |
| Dementia | ○ | ⊘ | Heart Disease | ○ | ⊘ | (Lou Gehrig's Disease) | | |
| Parkinson's Disease | ○ | ⊘ | Stroke | ○ | ⊘ | Polycystic Kidney Disease | ○ | ⊘ |

## ADDITIONAL QUESTIONS

| | Yes | No |
|---|---|---|
| **8. Are you actively at work?** | ○ | ⊘ |
| **9. Occupation:** Ironworker          **If retired, date of retirement:** 11/30/2016 | | |
| **10. Do you live with a spouse, family member or other person?** | ⊘ | ○ |

## INFORMATION ABOUT YOUR INSURANCE COVERAGE

| | Yes | No |
|---|---|---|
| **11. Are you covered by Medi-Cal? (This does not mean Medicare)?** | ○ | ⊘ |
| **12. Do you collect benefits from Social Security Disability Insurance (SSDI)?** | ○ | ⊘ |
| **13. Do you have a policy, certificate or application with this or any other company providing long term care insurance (including a health care service contract or health maintenance organization contract)?** | ○ | ⊘ |
| **14. Did you have another long term care insurance policy or certificate in force during the last 12 months?** | ○ | ⊗ |
| If that policy lapsed, when did it lapse? _____ | | |
| **15. Do you intend to replace any of your long term care, medical or health insurance coverage with this policy?** | ○ | ⊘ |

If you answered "Yes" to any of Questions 13 – 15, provide full details below and complete required replacement forms.

| Ques. No. | Company | Issue Date | Type | Daily Benefit | Paid-to-Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## COVERAGE APPLIED FOR

Comprehensive coverage is Nursing Facility and Residential Care Facility plus Home Care and Community – Based Services (HCCBS)

**Daily Benefit Applied For:** $  180

**Return of Premium Riders**
*(not available with Shortened Benefit Period Nonforfeiture)*

Select only one of the following:

○ Nursing Facility and Residential Care Facility Only

Ⓧ Comprehensive (Nursing Facility and Residential Care Facility plus Home Care and Community – Based Services)

Select only one of the following:

○ Full Return of Premium

○ Limited Return of Premium

○ Full Return of Premium with Optional Policy Surrender

○ Limited Return of Premium with Optional Policy Surrender

**Optional Inflation Protection Riders (select one of the following):**

○ Compound 5%     Ⓧ Compound 3%

**Benefit Extension Rider:**

○ Shared Benefit Amount *(available only with joint coverage and not available with Lifetime Benefit Period)*

**Step-Rated Inflation Protection *(available only with Lifetime Premium)*:**

○ Compound 5%     ○ Compound 3%

**Elimination Period:**

○ 0 Days     ○ 30 Days

◉ 90 Days     ○ 180 Days

**Additional Riders:**

○ HCCBS Waiver of Premium *(not available with Nursing Facility and Residential Care Facility Only coverage or Single Pay Premium Payment Option)*

○ First Day HCCBS Benefit *(not available with Nursing Facility and Residential Care Facility Only coverage or 0 Day Elimination Period)*

**Benefit Period:**

○ 2 Year Benefit Period     ○ 3 Year Benefit Period

**Benefit Period Extension:**
*(available only with 3 Year Benefit Period)*

○ 1 Year (extends the Benefit Period to 4 Years)

○ 2 Year (extends the Benefit Period to 5 Years)

○ 3 Year (extends the Benefit Period to 6 Years)

Ⓧ Lifetime

**Nonforfeiture Rider:**

○ Shortened Benefit Period Nonforfeiture

## REQUIRED BENEFIT REJECTION

*\*If Compound 5% Inflation Protection or Nonforfeiture Benefits **ARE NOT SELECTED** you MUST sign and date below:*

**REJECTION** of Compound 5% Inflation Protection Rider — I have reviewed the Outline of Coverage and the graph that compares the benefits and premiums of the policy with and without inflation protection. Specifically, I have reviewed the Compound 5% Inflation Protection Rider and I **reject** compound inflation protection at 5%.

| _____ | 12/27/21 | _____ | 12/27/21 |
| Primary Applicant Signature | Date | Joint Applicant Signature | Date |

**REJECTION** of Nonforfeiture Rider — I have reviewed the Outline of Coverage that describes the Shortened Benefit Period Nonforfeiture Rider and I have chosen to **reject** the rider.

| _____ | 18/29/21 | _____ | 12/29/21 |
| Primary Applicant Signature | Date | Joint Applicant Signature | Date |

NLTC100A-CA                                                    - 11 -                                                    00

## PREMIUM INFORMATION

**Premium Payment Options (select only one):**
○ Lifetime Pay Premium    ○ 10-Year Premium    ⊗ Single Pay Premium

Approved Association Group? ○ Yes ⊗ No

Approved Employer Group? ○ Yes ⊗ No

If "Yes," Approved Group Identification Code or Name? _____

*If this application is for an Employer Group, select the Employer Group Rate Class below.*

**Primary Applicant Rate Class:**
○ Preferred Plus    ⊗ Preferred    ○ Standard    ○ Employer Group

**Joint Applicant Rate Class**
○ Preferred Plus    ⊗ Preferred    ○ Standard    ○ Employer Group

**Payment Mode (select only one):**
⊗ Annual    ○ Semi-Annual    ○ Quarterly    ○ Monthly Automatic Payment Plan

○ **List Billing (select mode as shown below):**
○ Annual    ○ Semi-Annual    ○ Quarterly    ○ Monthly

Paid with Application: $ _0_____

**Special Request / Requested Effective Date**

## BENEFICIARY DESIGNATION

Name: _Charles Z. Elwell_

Address: ▮▮▮▮▮▮▮        Huntington Beach    CA        92646son
              Street              City              State            Zip Code

Relationship: _son_____    Social Security Number: _____    Date of Birth: _02/23▮_

## PROTECTION AGAINST UNINTENTIONAL LAPSE

I understand that I have the right to designate at least one person other than myself to receive notice of lapse or termination of this long term care insurance policy for non-payment of premium. I understand that notice will not be given until thirty (30) days after a premium is due and unpaid. **Check applicable box:**

⊘ I elect NOT to designate any person to receive such notice.

○ I designate the following person to receive notice prior to cancellation of my policy for non-payment of premium:

Name: _____    Telephone Number: _____

Address: _____
              Street              City              State            Zip Code

Relationship: _____    *Vicky Elen*        *Michael J. Turell*
              Signature of Applicant        Signature of Joint Applicant

NLTC100A-CA

00

Exhibit A - page 19        *04000171*

## REPRESENTATIONS OF THE APPLICANT(S)

Those parties who sign below agree and acknowledge that:

1. This application and any other supplements to the application will form the basis for, and become part of and attached to, any policy issued.

2. No agent, broker or medical examiner has any right to accept risks, make or change contracts, or to waive or modify any of National Guardian Life Insurance Company's rights or requirements.

3. National Guardian Life Insurance Company may require an attending physician statement, medical records, an underwriting assessment, a test or a medication report.

4. The Effective Date of the Policy is the date from which premiums are calculated and become due. No insurance shall take effect unless and until this application is approved by National Guardian Life Insurance Company, a policy is issued during the lifetime of the applicant(s), the initial premium payment has been made and, as of the delivery date of the policy, the health status of the applicant(s) remains insurable under National Guardian Life Insurance Company's underwriting standards.

5. By paying premiums on a basis more frequently than annually, the total premium payable during one year's time will be greater than if the premium were paid annually. That is, the cost of paying annualized periodic premiums will be more than the cost of paying one annual premium.

6. I, the undersigned applicant, acknowledge and represent that I have read the complete application. I, the applicant, represent to the best of my knowledge and belief, that the answers contained in this application are true, complete and correctly recorded.

7. **ACKNOWLEDGEMENT - Applicant**

   I acknowledge delivery / receipt of:

   (X) Outline of Coverage (including HICAP notice)

   (X) Shopper's Guide - Taking Care of Tomorrow

   (X) Long Term Care Insurance Personal Worksheet

   (X) Things You Should Know Before You Buy Long Term Care Insurance

   (X) Disclosure Statement including Notice of Insurance Information Practices

   (X) Notice of Privacy Practices

   ( ) (If applicable) The "Notice to Applicant Regarding Replacement of Individual Accident and Sickness or Long Term Care Insurance"

   **ACKNOWLEDGEMENT - Joint Applicant**

   I acknowledge delivery / receipt of:

   (X) Outline of Coverage (including HICAP notice)

   (X) Shopper's Guide - Taking Care of Tomorrow

   (X) Long Term Care Insurance Personal Worksheet

   (X) Things You Should Know Before You Buy Long Term Care Insurance

   (X) Disclosure Statement including Notice of Insurance Information Practices

   (X) Notice of Privacy Practices

   ( ) (If applicable) The "Notice to Applicant Regarding Replacement of Individual Accident and Sickness or Long Term Care Insurance"

| _Vic K Elull_ | 2/27/21 | _Andra G. Turner_ | 2/27/21 |
|---|---|---|---|
| Signature of Applicant | Date | Signature of Joint Applicant | Date |
| _Carol J Guilbaart_ | 12/27/21 | _Carol J Guilbaart_ | 12/27/21 |
| Signature of Licensed Agent | Date | Signature of Licensed Agent | Date |

## SIGNATURES

CAUTION: If your answers on this application are misstated or untrue, National Guardian Life Insurance Company may have the right to deny benefits or rescind your coverage.

| Signed at | _Huntington Beach CA_ | | _12/29/21_ |
|---|---|---|---|
| | City and State | | Date |
| X _Vic K Elull_ | | X _Andra G. Turner_ | |
| Signature of Applicant | | Signature of Joint Applicant | |

NLTC100A-CA · 13 · 00

## AGENT'S STATEMENT

**1. How well do you know the applicant(s)?**
- ◯ Known well for _____ years
- ◯ Known slightly for _____ years
- ⊘ Met very recently
- ◯ Relative? _____

**Yes No**

◯ ⊘ **2a. To the best of your knowledge, is the insurance applied for intended to replace any long term care, medical or health insurance in force with this or any other company?**

◯ ⊘ **2b. List any other health insurance policies that you have sold to the applicant(s):**

_____

(a) Which of the policies listed above are still in force, if any?

_____

(b) Which of the policies listed above sold in the past five (5) years are no longer in force, if any?

_____

◯ ⊘ **3. Did you ask the applicant(s) all the questions face to face and witness their signature(s)?**
If "No," provide details: by phone and email _____

⊘ ◯ **4. Did you deliver to the applicant(s) the Outline of Coverage, the required Disclosures, including the Notice of Insurance Information Practices, the NAIC Shopper's Guide and the Notice of Privacy Practices?**

I certify that the answers to the questions provided by the applicant(s) were fully and accurately recorded in the application, that the questions in the Agent's Statement have been answered accurately and that the Outline of Coverage, NAIC Shopper's Guide to Long-Term Care Insurance, the required Disclosures, Long-Term Care Insurance Personal Worksheet, Things You Should Know Before You Buy Long-Term Care Insurance, Disclosure Statement including Notice of Insurance Information Practices, and Notice of Privacy Practices have been given to the applicant(s). I have reviewed the current health insurance coverage of the applicant(s) and find that the coverage of the type and amount applied for is appropriate for the needs of the applicant(s). Further, if this is a replacement, I have reviewed the current health insurance coverage of the applicant(s) and find that this replacement is appropriate for the needs of the applicant(s).

| | |
|---|---|
| Carol Guilbault | *Carol D Guilbault* |
| Licensed Agent's Name (Please Print) | Licensed Agent's Signature |
| L0433 | 50 |
| Ident. Code | Split % |
| (425) 641-8502    (425) 462-9839 | L0105    12/29/21 |
| Agent Phone    Agent Fax | Agency Number    Date |
| Stephen Forman | L0107    50 |
| Second Agent's Name (Please Print) | Ident. Code    Split % |
| | |
| Third Agent's Name (Please Print) | Ident. Code    Split% |

Exhibit A - page 21                                    *04000175*

# Notice of Protection Provided by
# California Life and Health Insurance Guarantee Association

This notice provides a brief summary regarding the protections provided to policyholders by the California Life and Health Insurance Guarantee Association ("the Association"). The purpose of the Association is to assure that policyholders will be protected, within certain limits, in the unlikely event that a member insurer of the Association becomes financially unable to meet its obligations. Insurance companies licensed in California to sell life insurance, health insurance, annuities and structured settlement annuities are members of the Association. The protection provided by the Association is not unlimited and is not a substitute for consumers' care in selecting insurers. This protection was created under California law, which determines who and what is covered and the amounts of coverage.

Below is a brief summary of the coverages, exclusions and limits provided by the Association. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations or the rights or obligations of the Association.

## COVERAGE

- **Persons Covered**

Generally, an individual is covered by the Association if the insurer was a member of the Association *and* the individual lives in California at the time the insurer is determined by a court to be insolvent. Coverage is also provided to policy beneficiaries, payees or assignees, whether or not they live in California.

- **Amounts of Coverage**

The basic coverage protections provided by the Association are as follows.

- **Life Insurance, Annuities and Structured Settlement Annuities**

    For life insurance policies, annuities and structured settlement annuities, the Association will provide the following:

- Life Insurance

        80% of death benefits but not to exceed $300,000
        80% of cash surrender or withdrawal values but not to exceed $100,000

- Annuities and Structured Settlement Annuities

        80% of the present value of annuity benefits, including net cash withdrawal and net cash surrender values but not to exceed $250,000

    The maximum amount of protection provided by the Association to an individual, for *all* life insurance, annuities and structured settlement annuities is $300,000, regardless of the number of policies or contracts covering the individual.

- **Health Insurance**

    The maximum amount of protection provided by the Association to an individual, as of July 1, 2016 is $546,741. This amount will increase or decrease based upon changes in the health care cost component of the consumer price index to the date on which an insurer becomes an insolvent insurer. Changes to this amount will be posted on the Association's website www.califega.org.

---

Exhibit B - Page 22

## COVERAGE LIMITATIONS AND EXCLUSIONS FROM COVERAGE

The Association may not provide coverage for this policy. Coverage by the Association generally requires residency in California. You should not rely on coverage by the Association in selecting an insurance company or in selecting an insurance policy.

The following policies and persons are among those that are excluded from Association coverage:

 • A policy or contract issued by an insurer that was not authorized to do business in California when it issued the policy or contract

 • A policy issued by a health care service plan (HMO), a hospital or medical service organization, a charitable organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company, an insurance exchange, or a grants and annuities society

 • If the person is provided coverage by the guaranty association of another state

 • Unallocated annuity contracts; that is, contracts which are not issued to and owned by an individual and which do not guaranty annuity benefits to an individual

 • Employer and association plans, to the extent they are self-funded or uninsured

 • A policy or contract providing any health care benefits under Medicare Part C or Part D

 • An annuity issued by an organization that is only licensed to issue charitable gift annuities

 • Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as certain investment elements of a variable life insurance policy or a variable annuity contract

 • Any policy of reinsurance unless an assumption certificate was issued

 • Interest rate yields (including implied yields) that exceed limits that are specified in Insurance Code Section 1067.02(b)(2)(C).

-----------------------------------------------------------------------------------------------------------------------------------

## NOTICES

Insurance companies or their agents are required by law to give or send you this notice. Policyholders with additional questions should first contact their insurer or agent. To learn more about coverages provided by the Association, please visit the Association's website at www.califega.org, or contact either of the following:

California Life and Health Insurance            California Department of Insurance
Guarantee Association                           Consumer Communications Bureau
P.O. Box 16860                                  300 South Spring Street
Beverly Hills, CA  90209-3319                   Los Angeles, CA 90013
(323) 782-0182                                  (800) 927-4357

**Insurance companies and agents are not allowed by California law to use the existence of the Association or its coverage to solicit, induce or encourage you to purchase any form of insurance. When selecting an insurance company, you should not rely on Association coverage. If there is any inconsistency between this notice and California law, then California law will control.**

Exhibit B - Page 23



**National Guardian Life Insurance Company**



**Home Office: Madison, WI**

**Long Term Care Administrative Office: LifeCare Assurance Company; PO Box 4243, Woodland Hills, CA 91365-4243**
**888.505.2332 • Fax 818.887.4595 • www.ngl-essentialltc.com**

## COMPREHENSIVE LONG TERM CARE INSURANCE POLICY

**READ THIS POLICY CAREFULLY. It is a legal contract between You and Us.**

THIS POLICY IS AN APPROVED LONG TERM CARE INSURANCE POLICY UNDER CALIFORNIA LAW AND REGULATIONS. HOWEVER, THE BENEFITS PAYABLE BY THIS POLICY WILL NOT QUALIFY FOR MEDI-CAL ASSET PROTECTION UNDER THE CALIFORNIA PARTNERSHIP FOR LONG TERM CARE. FOR INFORMATION ABOUT POLICIES AND CERTIFICATES QUALIFYING UNDER THE CALIFORNIA PARTNERSHIP FOR LONG TERM CARE, CALL THE HEALTH INSURANCE COUNSELING AND ADVOCACY PROGRAM AT THE TOLL-FREE NUMBER, 1-800-434-0222.

**This contract for long term care insurance is intended to be a federally qualified long-term care insurance contract and may qualify You for federal and state tax benefits.**

***INSURING AGREEMENT AND EFFECTIVE DATE:*** Subject to the terms and conditions described in this Policy, National Guardian Life Insurance Company agrees to pay to You the benefits described in this Policy. We make this agreement and issue this Policy in consideration of: (1) the statements made in Your signed application, which is attached to and made a part of this Policy; and (2) payment of the initial premium. This Policy takes effect on the Effective Date shown on the Policy Schedule.

***NOTICE TO BUYER:*** This Policy may not cover all of the costs associated with long-term care incurred by the buyer during the period of coverage. The buyer is advised to review carefully all Policy limitations.

***CAUTION:*** The issuance of this Comprehensive Policy is based on Your responses to the questions on Your application. A copy of Your application is attached to this Policy. If Your answers on Your application are misstated or untrue, the Company may have the right to deny benefits or rescind Your coverage. The best time to clear up any questions is now, before a claim arises. If, for any reason, any of Your answers are incorrect, contact the Company.

***THIS POLICY IS NOT A MEDICARE SUPPLEMENT POLICY:*** If You are eligible for Medicare, review the "Guide to Health Insurance for People with Medicare" available from Us.

***THIS POLICY IS GUARANTEED RENEWABLE FOR LIFE:*** To renew, pay the premium due by the Premium Due Date or within the Grace Period. We cannot cancel or refuse to renew this Policy. Premiums are subject to change. We can only change the premium for this Policy if We change premiums for everyone in Your state with the same class. Any such change must be actuarially justified and approved by Your state. This occurs when the actual experience of the class has been, or is anticipated to be different from, that assumed in the development of premiums for the class. A class includes persons with the same benefits, issue age and premium rate class at issue. We will give You at least sixty (60) days written notice at Your last address shown in Our records before We change Your premium.

***YOUR RIGHT TO EXAMINE POLICY:*** If You are not satisfied with this Policy, You may return it to Us at Our Long Term Care Administrative Office by first-class United States mail or to any authorized agent or agency within thirty (30) days from the date You receive it. We will then refund any premium You have paid within thirty (30) days of Our receipt of the returned Policy and then this Policy, all riders and attachments will be considered never to have been in effect.

This is a non-participating policy.

**Executed for the Company at its Home Office in Madison, WI.**

Joseph Celentano
President and CEO

Kimberly Shaul
Secretary

Exhibit B - Page 24

**DUPLICATE**

### Policy Guide

*GUARANTEED RENEWABILITY*.................................... 1

*POLICY SCHEDULE*................................................. 3

*POLICY DEFINITIONS*............................................. 4

*LIMITATIONS OR CONDITIONS ON ELIGIBILITY FOR
PAYMENT OF BENEFITS*..........................................9

   Eligibility for Payment of Benefits......................9

   Payment of Benefits............................................ 9

   Services Received in Another State.................... 9

   Limitations and Exclusions................................ 10

   Non-Duplication of Benefits............................. 10

   Coordination of Benefits.................................... 10

*POLICY BENEFITS*.................................................. 10

   Benefit Amount.................................................. 10

   Daily Benefit Amount......................................... 10

   Coverage Outside the United States, or Its
   Territories or Canada......................................... 10

   Facility Care Services..........................................11

   Extension of Benefits......................................... 11

   Facility Bed Reservation.....................................11

   Home Care and Community-Based Services.....11

   Emergency Response System............................ 11

   Caregiver Training.............................................11

   Respite Care Services......................................... 12

   Lowering Premiums by Reducing Benefits....... 12

*FILING A CLAIM*..................................................... 13

   Notice of Claim.................................................. 13

   Claim Forms....................................................... 13

   Proof of Loss...................................................... 13

   Time of Payment of Claims................................ 13

   Payment of Claims............................................. 13

   Beneficiary......................................................... 14

   Plan of Care Updates and Examinations........... 14

   Appealing a Claim.............................................. 15

   Right of Recovery............................................... 15

   Legal Action....................................................... 15

*PAYING YOUR PREMIUM*.......................................15

   Premium Due Dates........................................... 15

   Modes of Premium Payment............................. 15

   Payment Responsibility......................................15

   Unpaid Premium................................................ 15

   Waiver of Premium............................................ 16

   Grace Period....................................................... 16

   Unintentional Lapse........................................... 16

   Refund of Unearned Premium.......................... 16

*GENERAL PROVISIONS*.......................................... 16

   Misstatement of Age or Sex.............................. 16

   Entire Contract; Changes................................... 16

   Incontestability.................................................. 16

   Policy Termination............................................. 16

   Reinstatement – Lapse Due to Severe Cognitive
   Impairment or Loss of Functional Capacity...... 17

   Reinstatement – Lapse Due to Nonpayment of
   Premium............................................................17

   Joint Coverage................................................... 18

   Policy Ownership............................................... 18

   Assignment........................................................ 18

   Conformity with State Statutes........................ 18

## POLICY SCHEDULE

**DUPLICATE**

**POLICY INFORMATION**

| | | | |
|---|---|---|---|
| Policy Number: | 20-2000012932 | | |
| Primary Insured: | VICTORIA K ELWELL | Insuring Age: | 66 |
| Joint Insured: | MICHAEL J ELWELL | Insuring Age: | 60 |

| **POLICY FORMS** | **EFFECTIVE DATE** | **PREMIUM** |
|---|---|---|
| Comprehensive Long Term Care Insurance Policy, NLTC100P-CA | 02/02/2022 | $3,670.42 |
| Compound Inflation Protection Rider, NLTC100R-CI-CA | 02/02/2022 | $3,193.20 |
| Percentage Increase Rate: 3% | | |
| Benefit Period Extension Rider, NLTC100R-BPE-CA | 02/02/2022 | $6,863.62 |
| Single Premium Endorsement, NLTCE-SP-CA | 02/02/2022 | $215,656.71 |
| Total Single Premium: | | $229,383.95 |

| | |
|---|---|
| Premium Payment Period: | Single |
| Anniversary Date: | 02/02/2023 and each succeeding 02/02 thereafter. |
| Policy Schedule Date: | 07/12/2024 |

This Policy Schedule replaces any previously issued Policy Schedules.

| | | **DUPLICATE** | |
|---|---|---|---|
| Policy Number: | 20-2000012932 | | |
| Primary Insured: | VICTORIA K ELWELL | Insuring Age: | 66 |
| Joint Insured: | MICHAEL J ELWELL | Insuring Age: | 60 |

**BENEFIT INFORMATION**

All Benefits, the Elimination Period and the Benefit Amount shown below apply individually to each Insured named above.

| | |
|---|---|
| Elimination Period: | 90 Days |
| Benefit Period: | 3 Years |
| Benefit Period Extension: | Lifetime |
| Total Benefit Period with Extension Rider: | Lifetime |
| Daily Benefit for Facility Care Services (in a Nursing Facility or Residential Care Facility):  up to | $180.00 |
| Daily Benefit for Home Care and Community-Based Services:  up to | $180.00 |
| Monthly Benefit for Emergency Response System:  up to | $50.00 per month |
| Maximum Lifetime Caregiver Training Benefit:  up to | $900.00 |
| Facility Bed Reservation:  up to | 30 days per calendar year |
| Respite Care Services:  up to | 30 days per calendar year |
| Coverage outside the United States, or its territories, or Canada:  up to | 30 days per calendar year |

Benefit Amount payable:     Lifetime

**If You have general questions regarding long-term care insurance, contact the California Department of Insurance at 800-927-4357.  If You have any questions regarding this Policy, our toll-free number for policy service and claims is 888-505-2332.**

***POLICY DEFINITIONS***

**DUPLICATE**

**Activities of Daily Living:**

- Bathing: which shall mean washing oneself by sponge bath; or in either a tub or shower, including the task of getting into or out of the tub or shower.
- Continence: which shall mean the ability to maintain control of bowel and bladder function; or, when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for catheter or colostomy bag).
- Dressing: which shall mean putting on and taking off all items of clothing and any necessary braces, fasteners, or artificial limbs.
- Eating: which shall mean feeding oneself by getting food into the body from a receptacle (such as a plate, cup or table) or by a feeding tube or intravenously.
- Toileting: which shall mean getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene.
- Transferring: which shall mean moving into or out of a bed, chair, or wheelchair.

Medication management is not an Activity of Daily Living.

**Adult Day Care** is medical or non-medical care (or both) provided on a less than twenty-four (24) hour basis to Chronically Ill individuals in a licensed facility outside the Home, for persons in need of personal services, supervision, protection, or assistance in sustaining daily needs such as eating, bathing, dressing, ambulating, transferring, toileting and taking medications.

**Adult Day Care Center** means a licensed facility outside the Home that provides medical and non-medical care (or both) to Chronically Ill persons in need of personal services, supervision, protection, or assistance in sustaining daily needs such as eating, bathing, dressing, ambulating, transferring, toileting and taking medications.

**Caregiver Training** means training provided by a health care professional, approved by Us, to an informal caregiver. The informal caregiver may be an unpaid member of Your family, a friend or neighbor. Examples of such training may include, but are not limited to:

- the proper care and use of medical devices such as catheters, intravenous medications, colostomy bags or suctioning tubes;
- assistance with medications, bandages and dressings; or
- the proper performance of various procedures to assist You with Your Activities of Daily Living.

Caregiver Training is provided in a setting other than a Hospital, Nursing Facility or Residential Care Facility.

**Certification** means that because this Policy is intended to be tax-qualified under federal law, a Licensed Health Care Practitioner, independent of Us, must certify in writing that You meet the definition of a Chronically Ill Individual. You have the option of submitting a Certification to Us or submitting a notice of claim and requesting that We conduct the assessment to determine if You are a Chronically Ill individual. If You request that We conduct the assessment, We shall provide an independent Licensed Health Care Practitioner to conduct the assessment. If a Licensed Health Care Practitioner makes a determination, that You do not meet the definition of a Chronically Ill individual, We will notify You that You are entitled to a second assessment by a Licensed Health Care Practitioner, upon request, who shall personally examine You to determine if You are a Chronically Ill individual. This requirement for a second assessment, however, shall not apply if the initial assessment was performed by a Licensed Health Care Practitioner who personally examined You.

The costs to have a Licensed Health Care Practitioner assess whether You meet, or continue to meet, the definition of a Chronically Ill individual, or to prepare a written Plan of Care shall not count against the lifetime maximum Benefit Amount of the Policy.

Assessments shall be performed promptly and any Certification shall be completed as quickly as possible to ensure that Your benefits are not delayed.

The Certification that You meet the definition of a Chronically Ill individual shall be renewed at least every twelve (12) months and each renewed Certification must be submitted to Us promptly upon issuance by the Licensed Health Care Practitioner.

Upon a Certification that You are a Chronically Ill individual, the Licensed Health Care Practitioner, after personally examining You shall develop and provide Us with a written Plan of Care.

**DUPLICATE**

**Chronically Ill** means that You require:

- Substantial Assistance from an individual to perform at least two (2) Activities of Daily Living due to the loss of functional capacity for a period expected to last at least ninety (90) days; or

- Substantial Supervision when You have a Severe Cognitive Impairment to protect You or others from threats to health and safety.

**Claim Forms** are those forms You will receive when We receive a notice of Your claim, which You must complete and return to Us for the purpose of determining eligibility for benefits and for Proof of Loss.

**Daily Benefit Amount** means the maximum amount of benefits that may be paid under this Policy on a daily basis. The initial Daily Benefit Amount is shown on the Policy Schedule. The current Daily Benefit Amount is the initial Daily Benefit Amount adjusted to reflect the provisions of any inflation protection rider attached to the Policy.

**Domestic Partner** means a person named in a valid registration of domestic partnership recognized by the state in which this Policy is issued.

**Effective Date** means the date coverage under this Policy and any attached riders is first in force. This date is shown on the Policy Schedule.

**Elimination Period** means the number of days on which You satisfy the conditions on Eligibility for Payment of Benefits and receive either Facility Care Services or Home Care and Community-Based Services as defined in this Policy, before We will begin paying benefits. Your Elimination Period is shown on the Policy Schedule. Each day of covered services under this Policy counts towards Your Elimination Period, unless otherwise noted. Once You have satisfied the Elimination Period, no future Elimination Period is required. Days may be accumulated under separate claims in order to satisfy the Elimination Period. The Elimination Period applies to each insured individually under joint coverage.

The Elimination Period is not applicable to Caregiver Training or Respite Care Services. Use of these benefits does not count toward satisfaction of the Elimination Period for any other benefits payable under this Policy.

The Elimination Period will not be satisfied by any confinement, care, treatment, or services described in the Limitations and Exclusions provision.

The Elimination Period will also not be satisfied for services described in the Non-Duplication of Benefits provision.

**Facility Care Services** means Qualified Long Term Care Services provided to You in a Nursing Facility or Residential Care Facility. Reimbursement for Facility Care Services shall include per diem expenses, as well as the itemized costs of ancillary supplies and daily services, up to the maximum Daily Benefit Amount permitted under this Policy.

**Hands-On Assistance** means the physical assistance of another person without which You would be unable to perform the Activities of Daily Living.

**Home** means the place where You maintain permanent residence. Home does not include a facility, a Hospital, or any institutional setting where the insured is dependent on others for Substantial Assistance with the Activities of Daily Living or Substantial Supervision due to a Severe Cognitive Impairment.

**Home Health Care Agency** means an entity that is regularly engaged in providing Home Health Care for compensation and employs staff, qualified by training or experience, to provide such care. The entity must: keep clinical records or care plans on all patients; provide ongoing supervision and training to its employees appropriate to the services to be provided; and have the appropriate state licensure or certification, where required. If licensure or certification is not required, the entity must be supervised by a qualified professional such as a Registered Nurse (RN), a licensed Social Worker, or a Physician and must meet the above criteria. The use of a Home Health Care Agency may not be required in certain states to receive Qualified Long Term Care Services.

Exhibit B - Page 29

DUPLICATE

**Home Care and Community-Based Services** means Qualified Long Term Care Services that provide You with Adult Day Care in an Adult Day Care Center, Home Health Care, Personal Care Services, Homemaker Services, Respite Care, Hospice Services or Caregiver Training. Services may be provided by any Skilled Person who is duly licensed or certified to perform such services, where licensing or certification is required or by an Unskilled Person, if licensure or certification is not required.

**Home Health Aide** means a person who is appropriately licensed, certified or qualified to provide Home Health Aide Services in the state in which the services are provided.

**Home Health Aide Services** means Personal Care Services that are provided by a Home Health Aide under a Plan of Care developed by a Licensed Health Care Practitioner.

**Home Health Care** means skilled nursing or other professional services in the Home, including but not limited to, part-time and intermittent skilled nursing services, Home Health Aide Services, physical therapy, occupational therapy, or speech therapy and audiology services, and medical social services provided by a Social Worker, provided to a Chronically Ill individual, through a written Plan of Care developed by a Licensed Health Care Practitioner.

**Homemaker Services** means assistance with activities necessary to or consistent with Your ability to remain in Your Home that is provided by a Skilled or Unskilled Person under a Plan of Care developed by a Physician or a multidisciplinary team under medical direction because You are Chronically Ill.

**Hospice Services** means outpatient services not paid by Medicare and are designed to provide palliative care, alleviate the physical, emotional, social and spiritual discomforts of an individual who is experiencing the last phases of life due to the existence of a terminal disease and to provide supportive care to the primary caregiver and the family. Care may be provided by a Skilled Person or Unskilled Person under a Plan of Care developed by a Physician or a multidisciplinary team under medical direction.

**Hospital** means an institution or facility that is:

- licensed as a Hospital by the proper authority of the state in which it is located; or
- accredited as a Hospital by the Joint Commission on Accreditation of Hospitals.

**Immediate Family** means Your spouse or Domestic Partner, Your parents, Your siblings, or Your children.

**Independent Medical Examination** means an objective medical assessment of an individual by a Physician.

The Physician shall not be a person employed by Us or be compensated in any manner that is linked to the outcome of an assessment or Certification.  Any assessment of whether the insured is Chronically Ill must be performed by a Licensed Health Care Practitioner who is independent of the insurer.

**Licensed Health Care Practitioner** means:

- a Physician; or
- a Registered Nurse; or
- a licensed clinical Social Worker; or
- other individual who the Secretary of the United States Department of the Treasury may prescribe by regulation.

The Licensed Health Care Practitioner must not be a member of Your Immediate Family.

The Licensed Health Care Practitioner shall not be a person employed by Us or be compensated in any manner that is linked to the outcome of an assessment or Certification.

**Medicaid** means the reimbursement system under Title XIX, of the Federal Social Security Act, as amended.

**Medicare** means the Health Insurance for the Aged Act, Title XVIII of the Social Security Amendments of 1965 as then constituted or later amended.

**Mental or Nervous Disorders** means affective disorders, anxiety disorders, personality disorders, psychotic disorders, or other mental or emotional disease or disorders. However, this definition does not include Alzheimer's or other demonstrable organic diseases such as senile dementia.

**Nurse** means someone who is licensed as a Registered Nurse (RN), Licensed Practical Nurse (LPN), or Licensed Vocational Nurse (LVN) and is operating within the scope of that license.

DUPLICATE

**Nursing Facility** means a facility or institution, other than a Hospital, that includes:

- a licensed health facility that is certified to participate as a provider of care either as a skilled nursing facility in the federal Medicare Program under Title XVIII of the Social Security Act or as a nursing facility in the federal Medicaid Program under Title XIX of the Social Security Act, or as both.

- skilled nursing facility, meaning a licensed health facility that provides continuous skilled nursing care and supportive care to patients whose primary need is for availability of skilled nursing care on an extended basis, and provides for twenty-four (24)-hour inpatient care, and, as a minimum, includes physician, skilled nursing, dietary, pharmaceutical services and an activity program;

- an intermediate care facility, meaning a licensed health facility that provides inpatient care to ambulatory or nonambulatory patients who have a recurring need for skilled nursing supervision and need supportive care, but who do not require availability of continuous skilled nursing care;

- a nursing home, meaning any institution, facility, place, building, or agency, or portion thereof, licensed as a licensed skilled nursing facility or intermediate care facility;

- an inpatient hospice facility, meaning a licensed health facility with a capacity of no more than twenty-four (24) beds that provides routine care, continuous care, inpatient respite care, and inpatient hospice care, and is operated by a licensed provider of hospice services and certified as a hospice pursuant to Part 418 of Title 42 of the Code of Federal Regulations.

- a facility, institution, or wing, ward or unit of a facility, including secure Alzheimer's units, which provides nursing care to inpatients and has the appropriate state licensure or certification as a Nursing Facility where licensure or certification is required. If licensure or certification is not required, it meets all of the following criteria:

  - is a separate facility or a distinct part of another health care facility;

  - provides twenty-four (24) hours per day skilled, intermediate or custodial care under the supervision of a Registered Nurse (RN) or Physician; and maintains a daily record on each patient.

Unless otherwise excluded in this Policy, a Nursing Facility includes a facility otherwise named, which meets the above criteria.

A Nursing Facility is not: the insured's Home; a facility for the treatment of alcoholism, alcohol abuse or drug addiction, or a facility operated primarily for the treatment of Mental or Nervous Disorders.

**Partner** means an adult who is either:

- named, along with the insured, in a valid certificate or license of civil union recognized by the state in which this Policy is issued, including a Declaration of Domestic Partnership filed with the Secretary of State in California; or

- has been living with the insured for the past three (3) consecutive years in a committed relationship as the insured's partner or as a member of the insured's family; and

- is committed to sharing basic living expenses with the insured; and

- is not married to the insured, or anyone else; and

- if related to the insured, belongs to the same generation of the insured's family (e.g. brother, sister, or cousin).

**Personal Care Services** means the assistance with the Activities of Daily Living, including the instrumental activities of daily living, provided by a Skilled Person or an Unskilled Person under a Plan of Care developed by a Physician or a multidisciplinary team under medical direction. "Instrumental activities of daily living" include using the telephone, managing medications, moving about outside, shopping for essentials, preparing meals, laundry, and light housekeeping. Reimbursement for Personal Care Services is conditioned upon the qualification for, and the receipt of, Qualified Long Term Care Services.

**Physician,** as defined in section 1861(r)(1) of the Social Security Act, is a doctor of medicine or osteopathy legally authorized to practice medicine and surgery by the state in which he or she performs such function or action, including osteopathic practitioners within the scope of his or her practice as defined by state law.

**Plan of Care** means a written description of Your needs and the specification of the type, frequency, and providers of all formal and informal long term care services required by You, and the cost, if any. The Plan of Care is prescribed by a Licensed Health Care Practitioner developed in consultation with You, based upon a physical assessment indicating You are Chronically Ill. The Plan of Care is subject to change, as Your condition and service requirement change, and must be updated as Your needs change.

**Policy** means this contract with National Guardian Life Insurance Company.

**Policy Schedule** means the pages of this Policy that show Policy Information and Benefit Information.

**Proof of Loss** is written information covering the date, nature, and daily charges for all Qualified Long Term Care Services received. The Proof of Loss will include: information about Your health that documents Your need for Qualified Long Term Care Services; proof that You have incurred an expense for Qualified Long Term Care Services; the amount of the expense; proof of payment of the expense, such as cancelled checks; information about the amounts available from any other sources of long-term care benefits; and other information as may be required by Us from time to time. We will also need to be provided a Plan of Care, and completed Claim Forms.

**Qualified Long Term Care Services** means necessary diagnostic, preventive, therapeutic, curing, treating, mitigating and rehabilitative services, and maintenance or Personal Care Services, which are required by You when You are Chronically Ill, and are provided pursuant to a Plan of Care prescribed by a Licensed Health Care Practitioner.

**Registered Nurse (RN)** means a duly licensed registered graduate professional nurse acting within the scope of his or her license at the time the treatment or service is performed.

**Residential Care Facility** means a facility licensed as a Residential Care Facility for the elderly or a Residential Care Facility as defined in the Health and Safety Code.

Outside of California, eligible providers are facilities that meet applicable licensure standards, if any, and which meet the following criteria:

• provides care and related services sufficient to support needs resulting from impairment in the Activities of Daily Living or cognitive ability;

• provides care and services on a twenty-four (24)-hour basis;

• has a trained and ready-to-respond employee on duty in the facility at all times to provide care and services;

• provides three (3) meals a day and accommodates special dietary needs;

• has agreements to ensure that residents receive the medical services of a Physician or Nurse in case of an emergency; and

• has appropriate methods and procedures to provide necessary assistance to residents in the management of prescribed medications.

A Residential Care Facility does not include a Hospital, or a facility for the treatment of alcoholism, alcohol abuse or drug addiction.

**Respite Care Services** means Qualified Long Term Care Services provided on a short-term basis to relieve the primary caregivers in Your Home.

**Severe Cognitive Impairment** means a loss or a deterioration in intellectual capacity that is comparable to (and includes) Alzheimer's disease and similar forms of irreversible dementia, and is measured by clinical evidence and standardized tests that reliably measure impairment in the individual's:

• short-term or long-term memory;

• orientation as to people, places, or time; and

• deductive or abstract reasoning.

**Skilled Person** means an individual providing a Chronically Ill individual with Qualified Long Term Care Services for which they are licensed or certified to perform.

**Social Worker** means a person acting within the scope of providing social services who is duly licensed, if licensure is required in the state in which services are provided, and who holds the necessary education, experience or qualifications in providing social services as defined by state law.

DUPLICATE

**Stand-By Assistance** means the presence of another person within arm's reach of the individual that is necessary to prevent, by physical intervention, injury to the individual while the individual is performing the Activities of Daily Living (such as being ready to catch the individual if the individual falls while getting into or out of the bathtub or shower as part of bathing, or being able to remove food from the individual's throat if the individual chokes while eating).

**Substantial Assistance** means Hands-On or Stand-By Assistance.

**Substantial Supervision** means continual supervision (which may include cueing by verbal prompting, gestures or other demonstrations) by another person that is necessary to protect the severely cognitively impaired individual from threats to his or her health or safety (such as may result from wandering).

**Unskilled Person** means an unlicensed or non-certified individual providing Personal Care Services, Homemaker Services, or Hospice Services to a Chronically Ill individual under a Plan of Care prescribed by a Licensed Health Care Practitioner. Any Unskilled Person providing services must be qualified by training and experience to provide the services.

**We, Us, Our** means National Guardian Life Insurance Company.

**You, Your** means the owner of this Policy as indicated in Our records. The owner is the insured (both insureds under joint coverage) named as the insured(s) on the Policy Schedule, unless otherwise designated by written request.

### *LIMITATIONS OR CONDITIONS ON ELIGIBILITY FOR PAYMENT OF BENEFITS*

#### Eligibility for Payment of Benefits

While this Policy is in force, You will be eligible for Payment of Benefits if You are certified to be a Chronically Ill individual. This means that within the previous twelve (12) months, a Licensed Health Care Practitioner, who is independent of Us, has provided a written Certification that You require:

- Substantial Assistance from an individual to perform at least two (2) Activities of Daily Living (Bathing, Continence, Dressing, Eating, Toileting, Transferring) due to the loss of functional capacity for a period expected to last at least ninety (90) days; or
- Substantial Supervision when You have a Severe Cognitive Impairment to protect You or others from threats to health and safety.

A Licensed Health Care Practitioner, who is independent of Us, must develop and provide Us with a written Plan of Care after personally examining You.

The expected ninety (90)-day period for loss of functional capacity does not establish an additional waiting period beyond any Elimination Period selected before benefits become payable.

You have the option of submitting a Certification to Us or submitting a notice of claim and requesting that We conduct the assessment to determine if You are a Chronically Ill individual. If You request that We conduct the assessment, We shall provide an independent Licensed Health Care Practitioner to conduct the assessment.

Upon Certification that You are a Chronically Ill individual, the Licensed Health Care Practitioner after personally examining You shall develop and provide Us with a written Plan of Care.

#### Payment of Benefits

While this Policy is in force, We will pay benefits for Qualified Long Term Care Services if:

- You satisfy Eligibility for Payment of Benefits;
- You have satisfied any applicable Elimination Period shown on the Policy Schedule;
- You receive and incur costs for Qualified Long Term Care Services covered under this Policy pursuant to a Plan of Care;
- You have not exhausted the benefits under this Policy;
- You satisfy the requirements under the FILING A CLAIM section;
- Your claim is not subject to any Limitations and Exclusions contained in this Policy.

#### Services Received in Another State

If You satisfy the conditions for Payment of Benefits and receive services covered under this Policy in a state other than the state of issue, and the provider licensing or certification between the states differ, such differences will not impact benefits payable under this Policy.

**DUPLICATE**

**Limitations and Exclusions**

No benefits will be paid and the Elimination Period will not be satisfied for any confinement, care, treatment, or service(s):

- provided to You by a person in Your Immediate Family;
- provided outside the United States or its territories, or Canada, except as described under Coverage Outside the United States or Its Territories, or Canada in the Policy Benefits section of this Policy;
- for which You have no financial liability that is provided at no charge in the absence of insurance;
- provided at a government or veteran's facility or any other facility where You are not required to pay;
- provided for alcoholism or drug addiction;
- resulting from attempted suicide or intentionally, self-inflicted injury;
- resulting from war, an act of war or active duty in the armed forces; or
- resulting from participation in a felony, riot or insurrection.

**Non-Duplication of Benefits**

Benefits are not payable under this Policy for expenses incurred to the extent that such expenses are reimbursable or would be so reimbursable but for the application of a deductible or coinsurance amount under: (a) Medicare or (b) any other state or federal workers' compensation plan or other governmental program (except Medi-Cal or Medicaid).

The Elimination Period will not be satisfied by services described in this section.

**Coordination of Benefits**

This Coordination of Benefits provision applies when You have coverage for Facility Care Services or Home Care and Community-Based Services under more than one insurance policy. This provision applies whether those benefits are payable on an expense reimbursement, indemnity, cash payment or other basis.

We will reduce the amount of benefits We will pay for Qualified Long Term Care Services when the total amount payable under this and all other long term care coverage is greater than the actual expenses You incur for that covered care.

If You maintain other valid coverage, not with Us, providing benefits for the same loss on a provision of service or an expense incurred basis and of which this Company has not been given written notice prior to the occurrence or commencement of loss, the only liability under this Policy shall be for such proportion of the loss as the amount which would otherwise have been payable under this Policy plus the total of the like amounts under all valid coverage for such loss of which this insurer had notice bears to the total like amounts under all valid coverages for the loss, and for the return of such portion of the premiums paid as shall exceed the pro rata portion for the amount so determined. For the purpose of applying this provision when other coverage is on a provision of service basis, the "like amount" of the other coverage shall be taken as the amount which the services rendered would have cost in the absence of the coverage.

**POLICY BENEFITS**

**Benefit Amount**

Your Benefit Amount is shown on the Policy Schedule. The total of all benefits We will pay under this Policy and any attached riders will not exceed the Benefit Amount. Your coverage will end after We pay the total Benefit Amount.

**Daily Benefit Amount**

Your Daily Benefit Amount is the maximum amount of benefits that may be paid under this Policy on a daily basis. The initial Daily Benefit Amount is shown on the Policy Schedule. The *current* Daily Benefit Amount is the initial Daily Benefit Amount adjusted to reflect the provisions of any inflation protection rider attached to this Policy.

**Coverage Outside the United States, or Its Territories or Canada**

After You satisfy the conditions for Payment of Benefits, We will pay for covered services outside the United States or its territories, or Canada for up to thirty (30) days per calendar year.

Payment will be the actual daily charges You incur for covered services, up to the Daily Benefit Amount shown on the Policy Schedule. We will subtract the benefits We pay from the Benefit Amount.

Exhibit B - Page 34

DUPLICATE

**Facility Care Services**

After You satisfy the conditions for Payment of Benefits, We will pay for each day of Facility Care Services that You receive in a Nursing Facility or Residential Care Facility.

Payment will be the actual daily Facility Care Services charges You incur, up to the Daily Benefit Amount shown on the Policy Schedule, including per diem expenses, for Personal Care Services as well as the costs of ancillary supplies and services, except those that are provided for comfort or convenience that are not Qualified Long Term Care Services. We will subtract the benefits We pay from the Benefit Amount.

**Extension of Benefits**

If this Policy lapses, We will not terminate any benefits payable for Facility Care Services if Your confinement begins while this Policy is in force and continues without interruption after this Policy lapses. Any benefits payable under this provision are subject to the Benefit Amount, any applicable Elimination Period and all other provisions and Limitations and Exclusions of this Policy. No other Policy benefits or benefits added by rider or endorsement will be continued under this provision.

**Facility Bed Reservation**

After You satisfy the conditions for Payment of Benefits, We will pay You a benefit for Your Facility Bed Reservation if You:

- are receiving Facility Care Services;
- incur a temporary absence from a Nursing Facility or Residential Care Facility; and
- are charged by the facility to reserve Your accommodations.

Payment will be the actual daily charges You incur for the reservation, up to the Daily Benefit Amount shown on the Policy Schedule for Facility Care Services. We will subtract the benefits We pay from the Benefit Amount. This benefit is payable for a maximum of thirty (30) days per calendar year.

**Home Care and Community-Based Services**

After You satisfy the conditions for Payment of Benefits, We will pay a benefit for each day of covered Home Care and Community-Based Services (Adult Day Care, Home Health Care, Homemaker Services, Hospice Services, Personal Care Services, Respite Care Services) You receive.

Payment will be the actual daily Home Care and Community-Based Services charges You incur, up to the Daily Benefit Amount shown on the Policy Schedule. We will subtract the benefits We pay from the Benefit Amount.

**Emergency Response System**

If You are receiving benefits under this Policy for Home Care and Community-Based Services, We will reimburse You for charges incurred for an Emergency Response System up to fifty dollars ($50) per month. This includes a device or system installed in Your residence that provides You with a means of communication to request assistance in the event of a medical emergency. It is not intended as a security system for Your residence.

We will subtract the benefits We pay from the Policy Benefit Amount. This benefit is not payable if You are receiving Facility Care Services or You are confined in a Hospital.

**Caregiver Training**

After You satisfy the conditions for Payment of Benefits, We will pay a benefit for Caregiver Training, if prescribed in Your Plan of Care. This benefit is not subject to the Elimination Period. Use of this benefit does not count towards satisfaction of the Elimination Period for any other benefits payable under this Policy.

Payment will be the actual Caregiver Training charges You incur, up to the Maximum Lifetime Caregiver Training shown on the Policy Schedule. This is the maximum amount that We will reimburse for all Caregiver Training charges while You are insured under this Policy. Caregiver Training will only be provided to a person who will not be paid as Your caregiver. We will subtract the benefits We pay from the Benefit Amount.

**DUPLICATE**

**Respite Care Services**

After You satisfy the conditions for Payment of Benefits, We will pay a benefit for each day of Respite Care Services that You receive. This benefit is not subject to the Elimination Period. Use of these services does not count towards satisfaction of the Elimination Period for any other benefits payable under this Policy.

Payment will be the actual daily Facility Care Services charges or the actual daily Home Care and Community-Based Services charges You incur, up to the Daily Benefit Amount shown on the Policy Schedule. We will subtract the benefits We pay from the Benefit Amount. Respite Care Services are payable for a maximum of thirty (30) days per calendar year.

**Lowering Premiums by Reducing Benefits**

Upon renewal of this Policy, after Your coverage has been in force for one (1) year, You have the option to reduce the premiums under Your current coverage, subject to benefit availability. You may request that We lower Your premium by reducing Your benefits, as described below, by contacting Us at any time by submitting a written request to Our Long Term Care Administrative Office. The change will take effect on the next premium due date and We will send You a revised Policy Schedule. You may select from among the following five (5) options:

- reducing the Benefit Amount as shown on the Policy Schedule;
- reducing the Daily Benefit Amount as shown on the Policy Schedule;
- canceling an optional rider;
- reducing the percentage selected for the Compound Inflation Protection Rider if in force on the Policy; or
- converting this Comprehensive Long Term Care Insurance Policy to a Policy providing Nursing Facility and Residential Care Facility Only benefits.

The premium rate for Your reduced coverage will be based upon Your age on the date this Policy was originally issued and also the premium rate in effect on that date. In the event this Policy is about to lapse due to nonpayment of premium, We will notify You of the five (5) options described above, which will become available to You in order to reduce Your coverage. This notice will be sent to You at least thirty (30) days before this Policy is cancelled for nonpayment of premium.

In the event the premium rates are increased for everyone with this Policy form in Your state, You have the option to reduce Your coverage under any of the five (5) options described above.

**Increasing Your Benefits**

After Your coverage has been in force for one (1) year, and on each Policy Anniversary Date thereafter, You have the option to increase Your current coverage, subject to benefit availability, by selecting one (1) of the following two (2) options:

- increasing the Benefit Amount as shown on the Policy Schedule; or
- increasing the Daily Benefit Amount as shown on the Policy Schedule. The option You select to increase Your coverage will be based upon Your attained age at the time benefits are increased. The amount of the increase in Your coverage will be subject to evidence of Your insurability. The option to increase benefits must be made by written request to Us, within thirty (30) days of Your policy anniversary.

**Availability of New Benefits or Eligibility Criteria**

In the event that We develop a new benefit or new eligibility criteria for benefits, that were not available under Your existing Policy, We will provide You with notification of these enhancements. Such notice will be sent to You within twelve (12) months of availability and will include an offer to obtain the available enhancement. The enhancement offer will be subject to evidence of Your insurability and will be based on Your attained age at the time the offer is made. We will not provide any enhancements described above if You are: (a) presently receiving benefits under this Policy or attached riders; or (b) currently eligible to receive benefits, subject to meeting the Elimination Period shown on the Policy Schedule.

NLTC100P-CA                                        - 12 -                                        02

DUPLICATE

**FILING A CLAIM**

> To file a claim for benefits, please provide Us with advance notice or advise Us as quickly as possible by calling the toll-free number shown on the Policy Schedule.

**Notice of Claim**

You must give Us written Notice of Claim within thirty (30) days after You begin receiving care or services covered under this Policy, or as soon thereafter as reasonably possible. You may give notice or You may have someone do it for You. The notice must provide Us with sufficient information to identify You. It should be mailed to Us at Our Long Term Care Administrative Office or to one of Our agents.

**Claim Forms**

After You notify Our Long Term Care Administrative Office of a claim, We will send You or Your representative Claim Forms which You or Your representative must complete and return them to Us at Our Long Term Care Administrative Office.

If We do not send You a claim form within fifteen (15) days of Your notice to Us, You may meet the Proof of Loss requirement by giving Us a written Certification that You are Chronically Ill within the time limit stated in the Proof of Loss section. The written Certification must give Us information sufficient to identify You and must outline the nature and extent of Your loss. You also have the option to ask Us to conduct an assessment by a Licensed Health Care Practitioner, who is independent of Us, to determine that You are Chronically Ill to provide Proof of Loss.

**Proof of Loss**

You will be considered to have provided Proof of Loss when Our Long Term Care Administrative Office receives Certification from a Licensed Health Care Practitioner that You are Chronically Ill, and other documentation that You are receiving and paying for Qualified Long Term Care Services. Proof of Loss must include statements or bills which detail the date, nature and daily charges for all Qualified Long Term Care Services received. Proof of Loss information must include proof that You have incurred an expense for Qualified Long Term Care Services; the amount of the expense; proof of payment of the expense, such as cancelled checks; and information about the amounts available from any other sources of long-term care benefits.

Proof of Loss must be sent to Us within ninety (90) days after the date You incur expenses for Qualified Long Term Care Services. Failure to provide Proof of Loss within ninety (90) days will not invalidate the claim or reduce the claim, as long as proof is provided as soon as reasonably possible. In no event, except in the event of Your legal incapacity, may Proof of Loss be submitted later than one (1) year from the date of Your loss.

If We do not pay benefits upon receipt of written Proof of Loss, We will mail You within thirty (30) working days, a letter which states Our reasons for not paying the claim, either in whole or in part. The letter will also provide You with a written itemization of any documents or other information needed to process the claim or any portions not paid.

**Time of Payment of Claims**

Benefits payable under this Policy will be paid promptly after receipt and approval of written Proof of Loss.

**Payment of Claims**

For a claim to be payable, We must receive completed Claim Forms, Proof of Loss documentation, and written Plans of Care. Other requirements:

- **Authorizations**: From time to time, We will furnish You with authorizations to obtain information that is needed to determine your eligibility for payment of benefits. These authorizations must be signed by You or Your representative if You are incapable, and returned to the Company.
- **Medical Examination**. We may have You examined by a Licensed Health Care Practitioner.

**DUPLICATE**

Any examination or assessment will be performed: at Our expense; by a Licensed Health Care Practitioner, or care management professional of Our choice, and as often as is reasonably necessary in connection with a claim.

We will pay all covered benefits to You, or to Your assignee. Within one (1) month after the Elimination Period ends, if applicable, and all Proof of Loss requirements have been provided and the claim has been approved by Us, We will make the first benefit payment. While You continue to satisfy the terms of the Policy, We will continue to pay in accordance with all Policy provisions and attachments, up to the Benefit Amount shown on the Policy Schedule.

Upon Our receipt of written documentation validating Your death, unassigned benefits remaining due upon Your death may be paid to Your beneficiary or Your estate. If benefits are payable to Your estate, We may pay up to one-thousand dollars ($1,000) to any relative of yours by blood or marriage who We find is entitled to it. Any payments made in good faith will discharge Us with regard to such payment.

We may pay all or a portion of any benefits for care or services covered under this Policy to the provider of such care or services unless You instruct Us in writing to do otherwise when You file Your Proof of Loss with Us.

Benefit determinations and resolving benefit disputes shall be consistent with the applicable laws and regulations where the Policy is issued.

**Beneficiary**

The beneficiary will be the person or persons, named in the application or subsequently changed by written request, to receive any unassigned benefit payments due upon Your death (upon the last of Your deaths under joint coverage).

You may change the beneficiary at any time by giving Our Long Term Care Administrative Office a written notice. A change will not be effective until recorded by Us. Once recorded, the change will apply as of the date the request was signed, unless otherwise specified. We will not be liable for any action taken or payment made before a beneficiary change is recorded. The beneficiary's consent is not required to change the Policy or beneficiary, unless the designation of the beneficiary is irrevocable.

If You designate more than one person as beneficiary, the interests of all beneficiaries will be equal unless Your designation specifically provides otherwise. The share of any beneficiary who does not survive You shall pass equally to the surviving beneficiaries, unless Your designation specifically provides otherwise. If no beneficiary is designated or no beneficiary survives You, then Your estate will be the beneficiary.

**Plan of Care Updates and Examinations**

While You are receiving benefits under this Policy We reserve the right to require periodic updates to Your Plan of Care, but no more frequently than every thirty (30) days to discuss amendment to the Plan of Care with Your Licensed Health Care Practitioner and verify that the Plan of Care is appropriate and consistent with generally accepted standards. No more than one (1) Plan of Care may be in effect at a time. We also reserve the right to require updates to Your Certification that You are Chronically Ill at least once a year, as described under the conditions on Eligibility for Payment of Benefits in this Policy.

While paying benefits under the Policy, We reserve the right to have a Licensed Health Care Practitioner, at Our direction, examine You when and as often as reasonably necessary to (1) verify for Us that the Plan of Care is appropriate and consistent with generally accepted principles or (2) provide Us with an updated Certification that You are a Chronically Ill individual.

If an examination or assessment is to be performed at Our direction, We reserve the right to select the Licensed Health Care Practitioner and will pay for the examination or assessment.

DUPLICATE

**Appealing a Claim**

We will evaluate Your claim based on the provisions of this Policy and the information given by You, Your Licensed Health Care Practitioner and other available sources. We will inform You in writing if We deny Your claim or any part of Your claim. If You do not agree with a claim decision, You or Your representative may appeal the denial. The appeal must be in writing to Us at Our Long Term Care Administrative Office and include all information that pertains to the claim. No special form is needed. We will review Your request and notify You or Your representative of Our decision within thirty (30) working days of receiving the request.

If after appealing a claim We notify You that Our denial has been upheld, You or Your representative may have the right to request an independent review of Our decision. We will provide You or Your representative with a written description of the independent review process, which includes the requirement for You to inform Us in writing of Your election to have the decision reviewed, within one hundred-twenty (120) days of Your

receipt of Our notification. You will be given the opportunity to select an independent review organization certified or approved by the state to conduct long term care benefit eligibility reviews, if such state approval or certification is required. If You do not select an independent review organization, one will be chosen for You and Your request will be forwarded to that organization for independent review.

**Right of Recovery**

If We make any errors in processing Your claim, We have the right to recover any overpayment of benefits. We will recover by offset any amounts that have not been previously recovered at the time We make another benefit payment.

**Legal Action**

Legal action to obtain benefits under this Policy may not be started earlier than sixty (60) days after required Proof of Loss has been filed with Us. Further, after required Proof of Loss was filed with Us, no legal action may be started later than three (3) years after required Proof of Loss was filed with Us. Any part of this provision which is in conflict with the laws of the state in which this Policy was issued is hereby amended to conform to the laws of such state.

*PAYING YOUR PREMIUM*

**Premium Due Dates**

The first premium is due on the Effective Date shown on the Policy Schedule. After the first premium has been paid, premiums will be due in the amount and frequency shown on the premium statement that We will mail to You.

**Modes of Premium Payment**

Premiums may be paid on an annual, semi-annual or quarterly basis, or by a monthly automatic premium plan. We will change the mode of premium payment if We receive a proper written request at Our Long Term Care Administrative Office before the Premium Due Date. The amount of each modal premium is calculated by multiplying the annual Policy premium by the applicable modal factors. The modal premiums for Your Policy are shown on the Policy Schedule.

| Premium Payment Mode | Modal Factor |
|---|---|
| Semi-Annually | 0.52 |
| Quarterly | 0.27 |
| Monthly | 0.0875 |

**Payment Responsibility**

You are responsible for payment of all Your premiums due while coverage is in force. Payment must be sent to Us at Our Long Term Care Administrative Office or any other office that We may designate.

**Unpaid Premium**

We may deduct any premium due and unpaid from any claim payment payable under this Policy.

DUPLICATE

**Waiver of Premium**

We will waive the payment of future premiums that become due for the Policy and any attached riders once We begin paying benefits for Facility Care Services (for either insured under joint coverage), and for as long as We continue to pay benefits for Facility Care Services under the terms of this Policy. The premium will be waived based on the premium mode in effect at the time We begin paying benefits for Facility Care Services. Premium payments will again become payable on the next Premium Due Date after Your confinement for Facility Care Services ends or when You are no longer receiving benefits for Facility Care Services.

**Grace Period**

Except for the first premium, You will have thirty-one (31) days after each due date to pay the premium due. This Policy remains in force during the Grace Period.

**Unintentional Lapse**

You have the right to name at least one (1) person who is to receive the notice of lapse for nonpayment of premium, in addition to You. The Company shall notify the insured (or owner if someone other than the insured is designated as such under this Policy) of the right to change this written designation, no less often than once every two (2) years.

This Policy shall not lapse for nonpayment of premium unless the Company, at least thirty (30) days before the effective date of the lapse, has given written notice to You and any individuals designated by You to receive notice of nonpayment of premium at the address provided by You for purposes of receiving notice of lapse. Notice shall be given by first class United States mail, postage prepaid. Notice will be sent at least thirty (30) days before lapse of Your coverage. Notice may not be given until thirty (30) days after a premium is due and unpaid. Notice shall be deemed to have been given as of five (5) days after the date of the mailing.

If Your premium is not paid within thirty-five (35) days after notice is sent, this Policy will lapse for nonpayment of premium.

**Refund of Unearned Premium**

Upon Your death (upon the last of Your deaths under joint coverage) We will refund any unearned premium for this Policy on a pro-rata basis. We will make this refund to Your beneficiary or Your estate within thirty (30) days of receipt of proof of Your death.

If You (both insureds under joint coverage or owner if someone else is designated as the owner under this Policy) request in writing to cancel this Policy, We will refund any unearned premium to You on a pro-rata basis. Cancellation will be effective upon receipt of Your request at Our Long Term Care Administrative Office or a later date specified by You.

Any refund due to You is not in lieu of nonforfeiture benefits, if any.

*GENERAL PROVISIONS*

**Misstatement of Age or Sex**

If Your age or sex is misstated on the application, We may, at any time, adjust Your benefits and/or premiums to reflect Your correct age or sex.

**Entire Contract; Changes**

This Policy, Your application, and any riders, endorsements or amendments to this Policy, shall constitute the entire contract between the Company and You. No document may be included by reference. No agent has authority to change this Policy or to waive any of its provisions.

No change in this Policy shall be valid until approved by an executive officer of the Company and unless such approval be endorsed on or attached to this Policy.

**Incontestability**

If this Policy has been in force for less than six (6) months, upon a showing of misrepresentation that is material to the acceptance of coverage, We may rescind this Policy or deny an otherwise valid claim on this Policy.



If this Policy has been in force for at least six (6) months, but less than two (2) years, and if We can show the misrepresentation is both material to the acceptance of coverage and that it pertains to the condition for which benefits are sought, We may rescind this Policy or deny an otherwise valid claim on this Policy.

After this Policy has been in force for two (2) years it is not contestable upon the grounds of misrepresentation alone. After two (2) years, this Policy may be contested only upon a showing that You knowingly and intentionally misrepresented relevant facts relating to Your health.

**Policy Termination**

This Policy will terminate and Your coverage will end on the earliest of:

- the date that the total of all benefits paid under this Policy is equal to the Benefit Amount shown on the Policy Schedule;
- the date We receive a written request from You (both insureds under joint coverage) at Our Long Term Care Administrative Office to cancel this Policy (or a later date specified by You in the cancellation request);
- the date this Policy lapses for nonpayment of premium as described under the Unintentional Lapse provision; or
- the date of Your death (last of Your deaths under joint coverage).

If this Policy provides joint coverage and only one of You has exhausted the Benefit Amount as described above, coverage will continue for the remaining insured as described under the Joint Coverage provision below.

**Reinstatement – Lapse Due to Severe Cognitive Impairment or Loss of Functional Capacity**

If Your coverage has lapsed and you provide us with proof that you have a Severe Cognitive Impairment or loss of functional capacity, Your coverage may be reinstated without an application if:

- You or Your representative requests reinstatement in writing to Our Long Term Care Administrative Office within six (6) months after lapse;
- We receive proof that You (either insured under joint coverage) have a Severe Cognitive Impairment or loss of functional capacity; and
- We receive all past due and unpaid premiums.

This Policy will then be reinstated as of the date of lapse and both You and We shall have the same rights that existed prior to the due date of the premium in default. Premium rates for this reinstated Policy will be based on Your original issue age.

**Reinstatement – Lapse Due to Nonpayment of Premium**

If the Policy lapses for nonpayment of premium, You may apply to reinstate the Policy. Later acceptance of premium by Us without requiring an application for reinstatement shall reinstate the Policy. To apply for reinstatement You must submit an application to Us at Our Long Term Care Administrative Office and pay all premium due as of the date the Policy lapsed through the date of reinstatement. The completed application must be received by Us within one (1) year after the end of the Grace Period. The Policy may only be reinstated as provided below.

The Policy will be reinstated upon either:

- Our written approval of the application; or
- on the forty-fifth (45th) day following the date of the conditional receipt, unless We have given notice to You of Our disapproval of the application.

This reinstated Policy will cover loss due to Severe Cognitive Impairment or loss of functional capacity that occurs after the date of reinstatement.

Upon reinstatement of this Policy both You and We shall have the same rights that existed prior to the due date of the premium in default, subject to any provisions noted or attached to the reinstated Policy. Premium rates for this reinstated Policy will be based on Your original issue age.

Exhibit B - Page 41

DUPLICATE

**Joint Coverage**

This Policy provides equal coverage for two persons if both apply and are issued coverage under this Policy. The name of each insured covered under this Policy is shown on the Policy Schedule.

All benefits, Eligibility for Payment of Benefits and Payment of Benefits, Elimination Periods, Benefit Amount and Limitations and Exclusions described in this Policy or shown on the Policy Schedule apply to each insured individually and separately, unless otherwise noted.

If one of You dies while the Policy is in force (and We receive proof of death), or one of You exhausts Your benefits, coverage continues for the remaining insured. The premium for the continued coverage will remain the same and will be due on this Policy's next Premium Due Date.

**Policy Ownership**

You (both insureds under joint coverage) are the owner of this Policy unless otherwise provided in the application or changed by written request. Changes in ownership designation, unless otherwise specified by the owner, shall take effect on the date the notice of change is signed by the owner. While the insured(s) are living, the owner may exercise every right and receive every benefit provided by this Policy. If the owner is not the insured (both insureds under joint coverage) and the owner dies while the insured(s) are living, unless otherwise provided, all rights of the owner shall be transferred to the owner's executors or administrators.

**Assignment**

No assignment of interest under this Policy will be binding upon Us unless the original or a copy of the assignment is filed with Us at Our Long Term Care Administrative Office. Assignment shall take effect on the date the assignment is signed by You, unless otherwise specified by You, subject to any payments made or actions taken by Us prior to receipt of the assignment. We do not assume any responsibility for the validity of an assignment.

**Conformity with State Statutes**

Any part of this Policy that, on the Effective Date, conflicts with the laws of the state in which You reside on such date, is hereby amended to meet the minimum requirements of those laws.

Exhibit B - Page 42

**National Guardian Life Insurance Company**



Home Office: Madison, WI
**Long Term Care Administrative Office: LifeCare Assurance Company; PO Box 4243, Woodland Hills, CA 91365-4243**
**888.505.2332 • Fax 818.887.4595 • www.ngl-essentialltc.com**

## COMPOUND INFLATION PROTECTION RIDER

### READ THIS RIDER CAREFULLY. It is a part of a legal contract between You and Us.

This rider is part of the Policy. The Effective Date for this rider is shown on the Policy Schedule of the attached Policy. It is issued in consideration of Your application and premium paid by You for this rider. All definitions, provisions, Limitations and Exclusions of the Policy apply to this rider unless changed by this rider.

**Compound Inflation Protection**

This rider provides an inflation protection benefit in the following manner: On each Policy Anniversary Date, We will increase the Daily Benefit Amount shown on the Policy Schedule. The increase will be based on the previous year's Daily Benefit Amount, without regard to claims paid, at the percentage increase rate shown on the Policy Schedule.

In addition, on each Policy Anniversary Date, the Benefit Amount and, if shown on the Policy Schedule, the Maximum Lifetime Caregiver Training benefit amount and the Maximum Shared Benefit Amount, without regard to claims paid, will increase by the same percentage rate.

Benefits will continue to increase annually while the rider is in force, including while You are receiving benefits under the Policy.

Unless otherwise stated in the Termination provision, benefit increases shall continue without regard to the Insured's age, claim status, claim history, or the length of time the Insured has been covered under the Policy.

**Termination**

This rider will terminate when the Policy terminates; or,

- when the Policy is continued under the provisions of any nonforfeiture benefit; or,

- on the date We receive the request from You (both insureds under joint coverage) at Our Long Term Care Administrative Office to cancel this rider or Your Policy (or a later date specified by You in the cancellation request).

**Your Right to Examine Rider**

If You are not satisfied with this rider, You may return it to Us at Our Long Term Care Administrative Office by first-class United States mail or any authorized agent or agency within 30 days from the date You receive it. We will then refund any premium You have paid for this rider within 30 days of Our receipt of the returned rider and this rider will be considered never to have been in effect.

**Executed for the Company at its Home Office in Madison, WI.**

Joseph Celentano
President and CEO

Kimberly Shaul
Secretary

**National Guardian Life Insurance Company**



**Home Office: Madison, WI**
**Long Term Care Administrative Office: LifeCare Assurance Company; PO Box 4243, Woodland Hills, CA 91365-4243**
**888.505.2332 • Fax 818.887.4595 • www.ngl-essentialltc.com**

## BENEFIT PERIOD EXTENSION RIDER

**READ THIS RIDER CAREFULLY. It is a part of a legal contract between You and Us.**

This rider is part of the Policy. The Effective Date for this rider is shown on the Policy Schedule of the attached Policy. It is issued in consideration of Your application and premium paid by You for this rider. All definitions, provisions, Limitations and Exclusions of the Policy apply to this rider unless changed by this rider.

### Benefit Period Extension

This rider provides an extension of Your Benefit Period. The 3-Year Benefit Period of the Policy is extended by the Benefit Period Extension as shown on the Policy Schedule, along with the Total Benefit Period available under the Policy.

### Termination

This rider will terminate when the Policy terminates; or,

- when the Policy is continued under the provisions of any nonforfeiture benefit; or,
- on the date We receive the request from You (both insureds under joint coverage) at Our Long Term Care Administrative Office to cancel this rider or Your Policy (or a later date specified by You in the cancellation request).

### Your Right to Examine Rider

If You are not satisfied with this rider, You may return it to Us at Our Long Term Care Administrative Office by first-class United States mail or any authorized agent or agency within 30 days from the date You receive it. We will then refund any premium You have paid for this rider within 30 days of Our receipt of the returned rider and this rider will be considered never to have been in effect.

**Executed for the Company at its Home Office in Madison, WI.**

Joseph Celentano
President and CEO

Kimberly Shaul
Secretary

Exhibit B - Page 44



**National Guardian Life
Insurance Company**



**Home Office: Madison, WI**
**Long Term Care Administrative Office: LifeCare Assurance Company; PO Box 4243, Woodland Hills, CA 91365-4243**
**888.505.2332 • Fax 818.887.4595 • www.ngl-essentialltc.com**

## SINGLE PREMIUM ENDORSEMENT

This endorsement is attached to and made part of the Policy as of the Effective Date. It is issued in consideration of Your application and premium submitted by You for this endorsement.

**Single Premium Payment Option**

This endorsement provides that Your Policy premiums may be paid with a Single Premium, after which no additional premiums are due.

The **GUARANTEED RENEWABILITY** provision of the Policy is **deleted** in its entirety and is replaced by the following:

> ***NONCANCELLATION PROVISION:*** When You pay to Us the Single Premium shown on the Policy Schedule, no additional premiums will be due and Your Policy is fully paid-up and noncancellable. National Guardian Life Insurance Company cannot unilaterally change the terms of coverage under Your Policy.

The following provision under ***PAYING YOUR PREMIUM*** is **deleted** in its entirety:

> **Refund of Unearned Premium**
>
> Upon Your death, We will refund any unearned premium for this Policy on a pro-rata basis. We will make this refund to Your Beneficiary or Your estate within 30 days of receipt of proof of Your death.
>
> If You (both insureds under joint coverage or owner if there is one designated under this Policy) request in writing to cancel this Policy, We will refund any unearned premium to You (owner if there is one designated under this Policy) on a pro-rata basis. Cancellation will be effective upon receipt of Your request at Our Long Term Care Administrative Office or a later date specified by You.
>
> Any refund due the insured (owner if there is one designated under this Policy) upon cancellation by the insured (owner if there is one designated under this Policy) is not in lieu of nonforfeiture benefits, if any.

**Executed for the Company at its Home Office in Madison, WI.**

Joseph Celentano
President and CEO

Kimberly Shaul
Secretary

NLTCE-SP-CA                                                                                                02



**National Guardian Life Insurance Company**

**DUPLICATE**

Home Office: Madison, WI
Long Term Care Administrative Office: LifeCare Assurance Company; PO Box 4243, Woodland Hills, CA 91365-4243
888.505.2332 • Fax 818.887.4595 • www.ngl-essentialltc.com

## Notice to California Policyholders

If you have any questions or problems regarding your policy, please contact us at:

**NATIONAL GUARDIAN LIFE INSURANCE COMPANY**                    **Telephone: 888-505-2332**

**Long Term Care Administrative Office**
**P.O. Box 4243**
**Woodland Hills, CA 91365-4243**

**For service on this policy or certificate please contact your agent for assistance.**

**The Department of Insurance should be contacted only after discussions with us have failed to produce a satisfactory resolution to your question or problem.**

**California Department of Insurance**

**Consumer Hotline:** 1-800-927-4357 (HELP)

                1-800-482-4833 (TTY)

**Website:** www.insurance.ca.gov

# CDI Headquarters Office

**Sacramento Office**
300 Capitol Mall, Suite 1700
Sacramento, CA 95814

**San Francisco Office**
45 Fremont Street, 23rd Floor
San Francisco, CA 94105

**Los Angeles Office**
300 South Spring Street, South Tower
Los Angeles, CA 90013

NLTC-POL-CA                                                                                                  01

Exhibit B - Page 46

**National Guardian Life Insurance Company**
**Home Office: Madison, WI**
**Long Term Care Administrative Office:**
**LifeCare Assurance Company;**
**PO Box 4243, Woodland Hills, CA 91365-4243**
**888.505.2332 • Fax 818.887.4595**
**www.ngl-essentialltc.com**



## THIRD PARTY ADMINISTRATOR NOTICE

Your policy is administered for National Guardian Life Insurance Company by LifeCare Assurance Company, a Third Party Administrator specializing in long-term care insurance policy administration.

All premium payments and inquiries regarding your insurance coverage, claims or other matters should be directed to the following address:

National Guardian Life Insurance Company
Long Term Care Administrative Office
21600 Oxnard Street, Suite 1500
P.O. Box 4243
Woodland Hills, CA 91365-4243
Telephone (888) 505-2332

NLTC-TPA

00



**National Guardian Life
Insurance Company**

Home Office: Madison, WI

Long Term Care Administrative Office: LifeCare Assurance Company; PO Box 4243, Woodland Hills, CA 91365-4243
888.505.2332 • Fax 818.887.4595 • www.ngl-essentialltc.com

## POLICY AMENDMENT

Policy No. <u>20 2000012932</u>, to which this Amendment is attached, has been issued other than presented at time of application completion, effective: <u>02/02/2022</u>. In consideration of the issuance and acceptance of the Policy, of which this Amendment forms a part, it is understood and agreed by and between the Company and the insured(s) <u>Victoria K Elwell and Michael J Elwell</u>, that:

ON VICTORIA'S APPLICATION QUESTION #7 (PAGE 5):

7. HAVE ANY OF THE FAMILY MEMBERS (MOTHER, FATHER, SIBLINGS) BEEN DIAGNOSED OR TREATED BY A MEMBER OF THE MEDICAL PROFESSION FOR ANY OF THE FOLLOWING:

ANSWERS "NO" APPLICANT WAS ADOPTED.

Other than as stated, this Amendment will not waive, alter or change any of the conditions, exclusions, limitations or provisions of this contract.

_Victoria K Elwell_ _____
Name of Insured (please print)

_Victoria K Elwell_ _____
Signature of Insured

_2/11/2022_
Date

_Michael Jillson Elwell_ _____
Name of Joint Insured (please print)

_Michael J. Elwell_ _____
Signature of Joint Insured

_2/11/2022_
Date

_____
Signature of Policy Owner, if different than Insured

_____
Signature of Witness

_____
Date

**National Guardian Life Insurance Company**
Home Office: Madison, WI
Long Term Care Administrative Office:
**LifeCare Assurance Company;**
PO Box 4243, Woodland Hills, CA 91365-4243
888.505.2332 • Fax 818.887.4595
www.ngl-essentialltc.com

**APPLICATION FOR INDIVIDUAL NURSING FACILITY AND RESIDENTIAL CARE FACILITY ONLY OR COMPREHENSIVE LONG TERM CARE INSURANCE**

2021 DEC 30    AM 9: 03

(PLEASE PRINT)

NLTC100A-CA

This contract for long-term care insurance is intended to be a federally qualified long-term care insurance contract and may qualify you for federal and state tax benefits.

THIS POLICY IS AN APPROVED LONG TERM CARE INSURANCE POLICY UNDER CALIFORNIA LAW AND REGULATIONS. HOWEVER, THE BENEFITS PAYABLE BY THIS POLICY WILL NOT QUALIFY FOR MEDI-CAL ASSET PROTECTION UNDER THE CALIFORNIA PARTNERSHIP FOR LONG TERM CARE. FOR INFORMATION ABOUT POLICIES AND CERTIFICATES QUALIFYING UNDER THE CALIFORNIA PARTNERSHIP FOR LONG TERM CARE, CALL THE HEALTH INSURANCE COUNSELING AND ADVOCACY PROGRAM AT THE TOLL-FREE NUMBER, 1-800-434-0222.

## APPLICANT INFORMATION

| Applicant (First Name, Middle Initial, Last Name) | | Sex | Birthplace (City, State) |
|---|---|---|---|
| Victoria K Elwell | | ○ M  ⊘ F | Cleveland, Ohio |

| Social Security Number | Height | Weight | Birthdate | Age as of Nearest Birthday |
|---|---|---|---|---|
| ██-6723 | 5' 6" | 155 | 02/26/██ | 66 |

Residence Address (Street, City, State, Zip)
████████ H.B. Ca. 92646

Phone
Work: ( 949 ) 705-1134
Home: ( 714 ) 849-9171
Other: ( 714 ) 815-6103

Billing Address — If different (Name, Street, City, State, Zip)

Acceptable times to call:
○ Day    ⊘ Evening    ⊘ Sat/Sun

## HEALTH QUESTIONS

**1. Have you ever been diagnosed by a medical professional for:**

| | | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|---|
| a. | Alzheimer's Disease | ○ | ⊘ | p. | Multiple Sclerosis | ○ | ⊘ |
| b. | Amyotrophic Lateral Sclerosis | ○ | ⊘ | q. | Muscular Dystrophy | ○ | ⊘ |
| c. | Bipolar Disorder | ○ | ⊘ | r. | Myasthenia Gravis | ○ | ⊘ |
| d. | Cardiomyopathy or Congestive Heart Failure | ○ | ⊘ | s. | Organic Brain Syndrome | ○ | ⊘ |
| e. | Cerebral Atrophy | ○ | ⊘ | t. | Paralysis | ○ | ⊘ |
| f. | Cerebral Palsy | ○ | ⊘ | u. | Parkinson's Disease | ○ | ⊘ |
| g. | Cystic Fibrosis | ○ | ⊘ | v. | Retinitis Pigmentosa | ○ | ⊘ |
| h. | Dementia or Senility | ○ | ⊘ | w. | Schizophrenia | ○ | ⊘ |
| i. | Huntington's Disease | ○ | ⊘ | x. | Scleroderma | ○ | ⊘ |
| j. | Kidney Disease requiring dialysis | ○ | ⊘ | y. | Spinal Cord Injury | ○ | ⊘ |
| k. | Liver Cirrhosis | ○ | ⊘ | z. | Stroke/ Cerebral Vascular Accident (CVA) | ○ | ⊘ |
| l. | Memory Loss | ○ | ⊘ | aa. | Systemic Lupus | ○ | ⊘ |
| m. | Mental Retardation | ○ | ⊘ | bb. | Transient Ischemic Attack (TIA) | ○ | ⊘ |
| n. | Metastatic Cancer – Cancer that has Spread from its original location | ○ | ⊘ | cc. | Type 1 Diabetes (Insulin Dependent) | ○ | ⊘ |
| o. | Multiple Myeloma | ○ | ⊘ | | | | |

Exhibit B - Page 49

## HEALTH QUESTIONS (continued)

**2.** **Please answer the following questions:**

a. Do you require mechanical or human assistance or supervision in any of the following activities:

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| eating | ○ | ⊘ | walking | ○ | ⊘ |
| dressing | ○ | ⊘ | maintaining continence | ○ | ⊘ |
| toileting | ○ | ⊘ | bathing | ○ | ⊘ |
| transferring from bed to chair | ○ | ⊘ | | | |

b. Do you currently use one of the following medical devices:

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| wheelchair | ○ | ⊘ | crutches | ○ | ⊘ |
| walker | ○ | ⊘ | oxygen | ○ | ⊘ |
| hospital bed | ○ | ⊘ | stairlift | ○ | ⊘ |
| quad cane | ○ | ⊘ | dialysis | ○ | ⊘ |

| | Yes | No |
|---|---|---|
| c. Do you currently reside in, have you been advised to enter, or are you planning to enter a nursing home, residential care facility, rehabilitation facility or other custodial facility, or are you currently receiving home health care services or attending adult day care? | ○ | ⊘ |
| d. Have you been diagnosed or treated by a member of the medical profession for AIDS (Acquired Immune Deficiency Syndrome) or AIDS Related Complex? | ○ | ⊘ |

**PLEASE NOTE BEFORE YOU CONTINUE WITH THIS APPLICATION: If you answered "YES" to any part of Question 1 or to Question 2, we suggest that you do not submit this application. If you answered "NO" to every part of Question 1 and to Question 2, please continue.**

Exhibit B - Page 50

**HEALTH QUESTIONS (continued)**

3. **Within the last 10 years, have you received a diagnosis or medical treatment by a member of the medical profession for any of the following conditions?**

Please indicate each that applies:

|  | | Yes | No | | Yes | No |
|---|---|---|---|---|---|---|
| **a.** | **Circulatory Disorders:** | | | | | |
| | Amaurosis Fugax | ○ | ⊘ | High Blood Pressure | ○ | ⊘ |
| | Heart Arrhythmias | ○ | ⊘ | Peripheral Vascular Disease | ○ | ⊘ |
| | Valvular Disease | ○ | ⊘ | Skin Ulcers | ○ | ⊘ |
| | Aneurysm | ○ | ⊘ | Amputation | ○ | ⊘ |
| | Coronary Artery Disease | ○ | ⊘ | Carotid Artery Disease | ○ | ⊘ |
| | Coronary Bypass Surgery | ○ | ⊘ | Embolisms | ○ | ⊘ |
| | Coronary Artery Stenting | ○ | ⊘ | | | |
| **b.** | **Endocrine and Pituitary Disorders:** | | | | | |
| | Diabetes | ○ | ⊘ | Pancreatitis | ○ | ⊘ |
| | Addison's Disease | ○ | ⊘ | Cushing's Disease | ○ | ⊘ |
| **c.** | **Cancers / Tumors:** | | | | | |
| | Bladder | ○ | ⊘ | Prostate | ○ | ⊘ |
| | Bone | ○ | ⊘ | Stomach | ○ | ⊘ |
| | Brain | ○ | ⊘ | Throat | ○ | ⊘ |
| | Breast | ○ | ⊘ | Thyroid | ○ | ⊘ |
| | Colon | ○ | ⊘ | Uterine | ○ | ⊘ |
| | Esophageal | ○ | ⊘ | Leukemia | ○ | ⊘ |
| | Kidney | ○ | ⊘ | Lymphoma | ○ | ⊘ |
| | Liver | ○ | ⊘ | Melanoma | ○ | ⊘ |
| | Lung | ○ | ⊘ | Meningioma | ○ | ⊘ |
| | Mouth | ○ | ⊘ | Squamous Cell | ○ | ⊘ |
| | Ovarian | ○ | ⊘ | Sarcoma | ○ | ⊘ |
| | Pancreas | ○ | ⊘ | | | |
| **d.** | **Genitourinary Disorders:** | | | | | |
| | Renal Insufficiency | ○ | ⊘ | Prostate Disorders | ○ | ⊘ |
| | Kidney Failure | ○ | ⊘ | Bladder Disorders | ○ | ⊘ |
| | Incontinence | ○ | ⊘ | | | |
| **e.** | **Gastrointestinal Disorders:** | | | | | |
| | Hepatitis | ○ | ⊘ | Crohn's Disease | ○ | ⊘ |
| | Ulcerative Colitis | ○ | ⊘ | Liver Disorders | ○ | ⊘ |
| **f.** | **Neurological Disorders:** | | | | | |
| | Mental Illness | ○ | ⊘ | Syncope | ○ | ⊘ |
| | Depression | ○ | ⊘ | Anxiety | ⊘ | ○ |
| | Seizures | ○ | ⊘ | Chronic Fatigue Syndrome | ○ | ⊘ |
| | Tremors | ○ | ⊘ | Post-Polio Syndrome | ○ | ⊘ |
| | Neuropathy | ○ | ⊘ | | | |
| **g.** | **Blood Disorders:** | | | | | |
| | Anemia | ○ | ⊘ | Hemochromatosis | ○ | ⊘ |
| | Polycythemia Vera | ○ | ⊘ | Immune System Disorder | ○ | ⊘ |
| | Thrombocytopenia | ○ | ⊘ | | | |

Exhibit B - Page 51

**HEALTH QUESTIONS (continued)**

3. **Within the last 10 years, have you received a diagnosis or medical treatment by a member of the medical profession for any of the following conditions?**

Please indicate each that applies:

|  |  | Yes | No |  | Yes | No |
|---|---|---|---|---|---|---|
| **h.** | **Musculoskeletal Disorders:** | | | | | |
| | Osteoporosis | ○ | ⊘ | Scoliosis | ○ | ⊘ |
| | Arthritis | ○ | ⊘ | Spinal Stenosis | ○ | ⊘ |
| | Rheumatoid Arthritis | ○ | ⊘ | Herniated Disc | ○ | ⊘ |
| | Osteoarthritis | ○ | ⊘ | Polymyalgia Rheumatica | ○ | ⊘ |
| | Fractures | ○ | ⊘ | Osteopenia | ○ | ⊘ |
| | Fibromyalgia | ○ | ⊘ | Paralysis | ○ | ⊘ |
| | Degenerative Joint Disease | ○ | ⊘ | Injury due to Falls or Imbalance | ○ | ⊘ |
| **i.** | **Respiratory Disorders:** | | | | | |
| | Emphysema | ○ | ⊘ | Asbestosis | ○ | ⊘ |
| | Bronchitis | ○ | ⊘ | Sarcoidosis | ○ | ⊘ |
| | Asthma | ○ | ⊘ | Chronic Obstructive Pulmonary Disease | ○ | ⊘ |
| | Bronchiectasis | ○ | ⊘ | | | |
| **j.** | **Eye and Ear Disorders:** | | | | | |
| | Macular Degeneration | ○ | ⊘ | Labyrinthitis | ○ | ⊘ |
| | Glaucoma | ○ | ⊘ | Meniere's / Vertigo | ○ | ⊘ |
| **k.** | **Substance Abuse:** | | | | | |
| | Alcoholism | ○ | ⊘ | Illicit Drug Use | ○ | ⊘ |
| | Drug Dependency | ○ | ⊘ | | | |

4. **Provide the name, address and phone number of your primary care physician (PCP) if you have consulted your physician within the last 5 years.**

Karen Sun Integrative Welless 4 Hughes Sutie 150 Irvinr Ca. (949) 768-6780

Date last seen: 12/6/2021                    Reason for visit: Bio-Identical Hormones and vitamins

5. **During the past 2 years, have you taken prescription medication? If "Yes," list all medications and the name(s) of the prescribing physician(s):**

Vyvanse 20 mg and Lexapro 10 mg - for ADD and Anxitey (due to ADD) Pacific Neuropsychiatric Specialist -Brandon Stutz

Valtrex 500mg - Cole Fulwider

Progesterone 50mg - Karen Sun

## HEALTH QUESTIONS (continued)

**6. During the past 2 years, have you:**

|  | Yes | No |
|---|---|---|
| a. used tobacco products (cigarettes, pipe, cigar, or chewing tobacco)? | ○ | ⊘ |
| b. received disability benefits? | ○ | ⊘ |
| c. been advised to have any surgery or diagnostic test that has not yet been performed? | ○ | ⊘ |
| d. had an application for Life, Disability Income or Long-Term Care insurance declined, modified or rated? | ○ | ⊘ |

If "Yes," please provide reason for the adverse underwriting decision:

_____

**7. Have any of your family members (mother, father, siblings) been diagnosed or treated by a member of the medical profession for any of the following:**  ** Applicant was adopted **

|  | Yes | No |  | Yes | No |  | Yes | No |
|---|---|---|---|---|---|---|---|---|
| Alzheimer's Disease | ○ | ○ | Huntington's Disease | ○ | ○ | Amyotrophic Lateral Sclerosis (Lou Gehrig's Disease) | ○ | ○ |
| Dementia | ○ | ○ | Heart Disease | ○ | ○ | Polycystic Kidney Disease | ○ | ○ |
| Parkinson's Disease | ○ | ○ | Stroke | ○ | ○ | | | |

## ADDITIONAL QUESTIONS

|  | Yes | No |
|---|---|---|
| 8. Are you actively at work? | ⊘ | ○ |
| 9. Occupation: Data Governance Specialist    If retired, date of retirement: _____ | | |
| 10. Do you live with a spouse, family member or other person? | ⊘ | ○ |

## INFORMATION ABOUT YOUR INSURANCE COVERAGE

|  | Yes | No |
|---|---|---|
| 11. Are you covered by Medi-Cal? (This does not mean Medicare) | ○ | ⊘ |
| 12. Do you collect benefits from Social Security Disability Insurance (SSDI)? | ○ | ⊘ |
| 13. Do you have a policy, certificate or application with this or any other company providing long term care insurance (including a health care service contract or health maintenance organization contract)? | ○ | ⊘ |
| 14. Did you have another long term care insurance policy or certificate in force during the last 12 months? | ○ | ⊘ |
| If that policy lapsed, when did it lapse? _____ | | |
| 15. Do you intend to replace any of your long term care, medical or health insurance coverage with this policy? | ○ | ⊘ |

If you answered "Yes" to any of Questions 13 – 15, provide full details below and complete required replacement forms.

| Ques. No. | Company | Issue Date | Type | Daily Benefit | Paid-to-Date |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Exhibit B - Page 53

**COMPLETE THIS PAGE FOR JOINT COVERAGE APPLICANT ONLY**

**APPLICANT INFORMATION**

| Applicant (First Name, Middle Initial, Last Name) | | | Sex | Birthplace (City, State) |
|---|---|---|---|---|
| Michael J Elwell | | | ☑ M ○ F | Twin Falls Idaho |

| Social Security Number | Height | Weight | Birthdate | Age as of Nearest Birthday |
|---|---|---|---|---|
| ▮▮-6299 | 5' 8" | 185 | 07/01/▮▮ | 59 |

Residence Address (Street, City, State, Zip)
▮▮▮ H.B. Ca. 92646

Billing Address — If different (Name, Street, City, State, Zip)

Phone
Work: (      )
Home: ( 714 ) 849-9171
Other: ( 714 ) 335-8581
Acceptable times to call:
☑ Day      ☑ Evening      ☑ Sat/Sun

**HEALTH QUESTIONS**

1. **Have you ever been diagnosed by a medical professional for:**

| | Yes | No | | | Yes | No |
|---|---|---|---|---|---|---|
| a. Alzheimer's Disease | ○ | ☑ | | p. Multiple Sclerosis | ○ | ☑ |
| b. Amyotrophic Lateral Sclerosis | ○ | ☑ | | q. Muscular Dystrophy | ○ | ☑ |
| c. Bipolar Disorder | ○ | ☑ | | r. Myasthenia Gravis | ○ | ☑ |
| d. Cardiomyopathy or Congestive Heart Failure | ○ | ☑ | | s. Organic Brain Syndrome | ○ | ☑ |
| e. Cerebral Atrophy | ○ | ☑ | | t. Paralysis | ○ | ☑ |
| f. Cerebral Palsy | ○ | ☑ | | u. Parkinson's Disease | ○ | ☑ |
| g. Cystic Fibrosis | ○ | ☑ | | v. Retinitis Pigmentosa | ○ | ☑ |
| h. Dementia or Senility | ○ | ☑ | | w. Schizophrenia | ○ | ☑ |
| i. Huntington's Disease | ○ | ☑ | | x. Scleroderma | ○ | ☑ |
| j. Kidney Disease requiring dialysis | ○ | ☑ | | y. Spinal Cord Injury | ○ | ☑ |
| k. Liver Cirrhosis | ○ | ☑ | | z. Stroke/ Cerebral Vascular Accident (CVA) | ○ | ☑ |
| l. Memory Loss | ○ | ☑ | | aa. Systemic Lupus | ○ | ☑ |
| m. Mental Retardation | ○ | ☑ | | bb. Transient Ischemic Attack (TIA) | ○ | ☑ |
| n. Metastatic Cancer – Cancer that has Spread from its original location | ○ | ☑ | | cc. Type 1 Diabetes (Insulin Dependent) | ○ | ☑ |
| o. Multiple Myeloma | ○ | ☑ | | | | |

Exhibit B - Page 54

## HEALTH QUESTIONS (continued)

**2.  Please answer the following questions:**

a.  Do you require mechanical or human assistance or supervision in any of the following activities:

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| eating | ○ | ⊘ | walking | ○ | ⊘ |
| dressing | ○ | ⊘ | maintaining continence | ○ | ⊘ |
| toileting | ○ | ⊘ | bathing | ○ | ⊘ |
| transferring from bed to chair | ○ | ⊘ | | | |

b.  Do you currently use one of the following medical devices:

| | Yes | No | | Yes | No |
|---|---|---|---|---|---|
| wheelchair | ○ | ⊘ | crutches | ○ | ⊘ |
| walker | ○ | ⊘ | oxygen | ○ | ⊘ |
| hospital bed | ○ | ⊘ | stairlift | ○ | ⊘ |
| quad cane | ○ | ⊘ | dialysis | ○ | ⊘ |

| | Yes | No |
|---|---|---|
| c.  Do you currently reside in, have you been advised to enter, or are you planning to enter a nursing home, residential care facility, rehabilitation facility or other custodial facility, or are you currently receiving home health care services or attending adult day care? | ○ | ⊘ |
| d.  Have you been diagnosed or treated by a member of the medical profession for AIDS (Acquired Immune Deficiency Syndrome) or AIDS Related Complex? | ○ | ⊘ |

**PLEASE NOTE BEFORE YOU CONTINUE WITH THIS APPLICATION: If you answered "YES" to any part of Question 1 or to Question 2, we suggest that you do not submit this application. If you answered "NO" to every part of Question 1 and to Question 2, please continue.**

Exhibit B - Page 55

Michael Elwell

## HEALTH QUESTIONS (continued)

**3.** Within the last 10 years, have you received a diagnosis or medical treatment by a member of the medical profession for any of the following conditions?

Please indicate each that applies:

|  | Yes | No |  | Yes | No |
|---|---|---|---|---|---|
| **a. Circulatory Disorders:** |  |  |  |  |  |
| Amaurosis Fugax | ○ | ⊘ | High Blood Pressure | ○ | ⊘ |
| Heart Arrhythmias | ○ | ⊘ | Peripheral Vascular Disease | ○ | ⊘ |
| Valvular Disease | ○ | ⊘ | Skin Ulcers | ○ | ⊘ |
| Aneurysm | ○ | ⊘ | Amputation | ○ | ⊘ |
| Coronary Artery Disease | ○ | ⊘ | Carotid Artery Disease | ○ | ⊘ |
| Coronary Bypass Surgery | ○ | ⊘ | Embolisms | ○ | ⊘ |
| Coronary Artery Stenting | ○ | ⊘ |  |  |  |
| **b. Endocrine and Pituitary Disorders:** |  |  |  |  |  |
| Diabetes | ○ | ⊘ | Pancreatitis | ○ | ⊘ |
| Addison's Disease | ○ | ⊘ | Cushing's Disease | ○ | ⊘ |
| **c. Cancers / Tumors:** |  |  |  |  |  |
| Bladder | ○ | ⊘ | Prostate | ○ | ⊘ |
| Bone | ○ | ⊘ | Stomach | ○ | ⊘ |
| Brain | ○ | ⊘ | Throat | ○ | ⊘ |
| Breast | ○ | ⊘ | Thyroid | ○ | ⊘ |
| Colon | ○ | ⊘ | Uterine | ○ | ⊘ |
| Esophageal | ○ | ⊘ | Leukemia | ○ | ⊘ |
| Kidney | ○ | ⊘ | Lymphoma | ○ | ⊘ |
| Liver | ○ | ⊘ | Melanoma | ○ | ⊘ |
| Lung | ○ | ⊘ | Meningioma | ○ | ⊘ |
| Mouth | ○ | ⊘ | Squamous Cell | ○ | ⊘ |
| Ovarian | ○ | ⊘ | Sarcoma | ○ | ⊘ |
| Pancreas | ○ | ⊘ |  |  |  |
| **d. Genitourinary Disorders:** |  |  |  |  |  |
| Renal Insufficiency | ○ | ⊘ | Prostate Disorders | ○ | ⊘ |
| Kidney Failure | ○ | ⊘ | Bladder Disorders | ○ | ⊘ |
| Incontinence | ○ | ⊗ |  |  |  |
| **e. Gastrointestinal Disorders:** |  |  |  |  |  |
| Hepatitis | ○ | ⊘ | Crohn's Disease | ○ | ⊘ |
| Ulcerative Colitis | ○ | ⊘ | Liver Disorders | ○ | ⊘̶ |
| **f. Neurological Disorders:** |  |  |  |  |  |
| Mental Illness | ○ | ⊘ | Syncope | ○ | ⊘ |
| Depression | ○ | ⊘ | Anxiety | ○ | ⊘ |
| Seizures | ○ | ⊘ | Chronic Fatigue Syndrome | ○ | ⊘ |
| Tremors | ○ | ⊘ | Post-Polio Syndrome | ○ | ⊘ |
| Neuropathy | ○ | ⊘ |  |  |  |
| **g. Blood Disorders:** |  |  |  |  |  |
| Anemia | ○ | ⊘ | Hemochromatosis | ○ | ⊘ |
| Polycythemia Vera | ○ | ⊘ | Immune System Disorder | ○ | ⊘ |
| Thrombocytopenia | ○ | ⊘ |  |  |  |

UNDERWRITING DATA ENTRY EMAIL; Received 4/12/2021 4:57:04 PM; Received from: Mario.Diaz@lifecareassurance.com    00

## HEALTH QUESTIONS (continued)

**3.** **Within the last 10 years, have you received a diagnosis or medical treatment by a member of the medical profession for any of the following conditions?**

Please indicate each that applies:

|  | Yes | No |  | Yes | No |
|---|---|---|---|---|---|
| **h.** **Musculoskeletal Disorders:** | | | | | |
| Osteoporosis | ○ | ☑ | Scoliosis | ○ | ☑ |
| Arthritis | ○ | ☑ | Spinal Stenosis | ○ | ☑ |
| Rheumatoid Arthritis | ○ | ☑ | Herniated Disc | ○ | ☑ |
| Osteoarthritis | ○ | ☑ | Polymyalgia Rheumatica | ○ | ☑ |
| Fractures | ○ | ☑ | Osteopenia | ○ | ☑ |
| Fibromyalgia | ○ | ☑ | Paralysis | ○ | ☑ |
| Degenerative Joint Disease | ○ | ☑ | Injury due to Falls or Imbalance | ○ | ☑ |
| **i.** **Respiratory Disorders:** | | | | | |
| Emphysema | ○ | ☑ | Asbestosis | ○ | ☑ |
| Bronchitis | ○ | ☑ | Sarcoidosis | ○ | ☑ |
| Asthma | ○ | ☑ | Chronic Obstructive Pulmonary Disease | ○ | ☑ |
| Bronchiectasis | ○ | ☑ | | | |
| **j.** **Eye and Ear Disorders:** | | | | | |
| Macular Degeneration | ○ | ☑ | Labyrinthitis | ○ | ☑ |
| Glaucoma | ○ | ☑ | Meniere's / Vertigo | ○ | ☑ |
| **k.** **Substance Abuse:** | | | | | |
| Alcoholism | ○ | ☑ | Illicit Drug Use | ○ | ☑ |
| Drug Dependency | ○ | ☑ | | | |

**4.** **Provide the name, address and phone number of your primary care physician (PCP) if you have consulted your physician within the last 5 years.**

Memorial Prompt Care 9122 Adams Ave H.B Ca. Scott Newman 07

Date last seen: 07/16/2018        Reason for visit: Viagra 100mg

**5.** **During the past 2 years, have you taken prescription medication? If "Yes," list all medications and the name(s) of the prescribing physician(s):**

Only listed above

Exhibit B - Page 57

## HEALTH QUESTIONS (continued)

**6. During the past 2 years, have you:**

|  | Yes | No |
|---|---|---|
| a. used tobacco products (cigarettes, pipe, cigar, or chewing tobacco)? | ○ | ⊘ |
| b. received disability benefits? | ○ | ⊘ |
| c. been advised to have any surgery or diagnostic test that has not yet been performed? | ○ | ⊘ |
| d. had an application for Life, Disability Income or Long-Term Care insurance declined, modified or rated? | ○ | ⊘ |

If "Yes," please provide reason for the adverse underwriting decision:

_____

**7. Have any of your family members (mother, father, siblings) been diagnosed or treated by a member of the medical profession for any of the following:**

| | Yes | No | | Yes | No | | Yes | No |
|---|---|---|---|---|---|---|---|---|
| Alzheimer's Disease | ⊘ | ○ | Huntington's Disease | ○ | ⊘ | Amyotrophic Lateral Sclerosis (Lou Gehrig's Disease) | ○ | ⊘ |
| Dementia | ○ | ⊘ | Heart Disease | ○ | ⊘ | | | |
| Parkinson's Disease | ○ | ⊘ | Stroke | ○ | ⊘ | Polycystic Kidney Disease | ○ | ⊘ |

## ADDITIONAL QUESTIONS

|  | Yes | No |
|---|---|---|
| **8. Are you actively at work?** | ○ | ⊘ |
| **9. Occupation:** Ironworker          If retired, date of retirement: 11/30/2016 | | |
| **10. Do you live with a spouse, family member or other person?** | ⊘ | ○ |

## INFORMATION ABOUT YOUR INSURANCE COVERAGE

|  | Yes | No |
|---|---|---|
| **11. Are you covered by Medi-Cal? (This does not mean Medicare)** | ○ | ⊘ |
| **12. Do you collect benefits from Social Security Disability Insurance (SSDI)?** | ○ | ⊘ |
| **13. Do you have a policy, certificate or application with this or any other company providing long term care insurance (including a health care service contract or health maintenance organization contract)?** | ○ | ⊘ |
| **14. Did you have another long term care insurance policy or certificate in force during the last 12 months?** | ○ | ⊗ |
| If that policy lapsed, when did it lapse? _____ | | |
| **15. Do you intend to replace any of your long term care, medical or health insurance coverage with this policy?** | ○ | ⊘ |

If you answered "Yes" to any of Questions 13 – 15, provide full details below and complete required replacement forms.

| Ques. No. | Company | Issue Date | Type | Daily Benefit | Paid-to-Date |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Exhibit B - Page 58

Victoria and Michael Elwell

## COVERAGE APPLIED FOR

Comprehensive coverage is Nursing Facility and Residential Care Facility plus Home Care and Community – Based Services (HCCBS)

Select only one of the following:

( ) Nursing Facility and Residential Care Facility Only

(X) Comprehensive (Nursing Facility and Residential Care Facility plus Home Care and Community – Based Services)

Optional Inflation Protection Riders (select one of the following):

( ) Compound 5%        (X) Compound 3%

Step-Rated Inflation Protection *(available only with Lifetime Premium)*:

( ) Compound 5%        ( ) Compound 3%

Elimination Period:

( ) 0 Days        ( ) 30 Days

(✓) 90 Days        ( ) 180 Days

Benefit Period:

( ) 2 Year Benefit Period        (X) 3 Year Benefit Period

Benefit Period Extension:
*(available only with 3 Year Benefit Period)*

( ) 1 Year (extends the Benefit Period to 4 Years)

( ) 2 Year (extends the Benefit Period to 5 Years)

( ) 3 Year (extends the Benefit Period to 6 Years)

(X) Lifetime

Nonforfeiture Rider

( ) Shortened Benefit Period Nonforfeiture

Daily Benefit Applied For: $  180

Return of Premium Riders
*(not available with Shortened Benefit Period Nonforfeiture)*

Select only one of the following:

( ) Full Return of Premium

( ) Limited Return of Premium

( ) Full Return of Premium with Optional Policy Surrender

( ) Limited Return of Premium with Optional Policy Surrender

Benefit Extension Rider:

( ) Shared Benefit Amount *(available only with joint coverage and not available with Lifetime Benefit Period)*

Additional Riders:

( ) HCCBS Waiver of Premium *(not available with Nursing Facility and Residential Care Facility Only coverage or Single Pay Premium Payment Option)*

( ) First Day HCCBS Benefit *(not available with Nursing Facility and Residential Care Facility Only coverage or 0 Day Elimination Period)*

## REQUIRED BENEFIT REJECTION

\*If Compound 5% Inflation Protection or Nonforfeiture Benefits **ARE NOT SELECTED** you MUST sign and date below

REJECTION of Compound 5% Inflation Protection Rider — I have reviewed the Outline of Coverage and the graph that compares the benefits and premiums of the policy with and without inflation protection. Specifically, I have reviewed the Compound 5% Inflation Protection Rider and I reject compound inflation protection at 5%.

_____    12/27/21    _____  12/27/21
Primary Applicant Signature    Date    Joint Applicant Signature    Date

REJECTION of Nonforfeiture Rider — I have reviewed the Outline of Coverage that describes the Shortened Benefit Period Nonforfeiture Rider and I have chosen to reject the rider.

_____    12/29/21    _____  12/29/21
Primary Applicant Signature    Date    Joint Applicant Signature    Date

NLTC100A-CA

00

UNDERWRITING DATA ENTRY EMAIL: Received on 2/10/2022 8:46 AM, Received from: Mario.Diaz@lifecareassurance.com

**Exhibit B - Page 59**

## PREMIUM INFORMATION

**Premium Payment Options (select only one):**

○ Lifetime Pay Premium    ○ 10-Year Premium    ⊗ Single Pay Premium

Approved Association Group?  ○ Yes  ⊗ No

Approved Employer Group?  ○ Yes  ⊗ No

If "Yes," Approved Group Identification Code or Name? _____

*If this application is for an Employer Group, select the Employer Group Rate Class below.*

**Primary Applicant Rate Class:**

○ Preferred Plus    ⊗ Preferred    ○ Standard    ○ Employer Group

**Joint Applicant Rate Class:**

○ Preferred Plus    ⊗ Preferred    ○ Standard    ○ Employer Group

**Payment Mode (select only one):**

⊗ Annual    ○ Semi-Annual    ○ Quarterly    ○ Monthly Automatic Payment Plan

○ List Billing (select mode as shown below):

○ Annual    ○ Semi-Annual    ○ Quarterly    ○ Monthly

Paid with Application: $ _0_____

Special Request / Requested Effective Date

## BENEFICIARY DESIGNATION

Name: Charles Z. Elwell

Address: ███████████    City: Huntington Beach    State: CA    Zip Code: 92646son

Relationship: son    Social Security Number: _____    Date of Birth: 02/23/ ███

## PROTECTION AGAINST UNINTENTIONAL LAPSE

I understand that I have the right to designate at least one person other than myself to receive notice of lapse or termination of this long term care insurance policy for non-payment of premium. I understand that notice will not be given until thirty (30) days after a premium is due and unpaid. **Check applicable box:**

⊘ I elect NOT to designate any person to receive such notice.

○ I designate the following person to receive notice prior to cancellation of my policy for non-payment of premium:

Name: _____    Telephone Number: _____

Address: _____    Street    City    State    Zip Code

Relationship: _____    Signature of Applicant    Signature of Joint Applicant

Exhibit B - Page 60

## REPRESENTATIONS OF THE APPLICANT(S)

Those parties who sign below agree and acknowledge that:

1. This application and any other supplements to the application will form the basis for, and become part of and attached to, any policy issued.

2. No agent, broker or medical examiner has any right to accept risks, make or change contracts, or to waive or modify any of National Guardian Life Insurance Company's rights or requirements.

3. National Guardian Life Insurance Company may require an attending physician statement, medical records, an underwriting assessment, a test or a medication report.

4. The Effective Date of the Policy is the date from which premiums are calculated and become due. No insurance shall take effect unless and until this application is approved by National Guardian Life Insurance Company, a policy is issued during the lifetime of the applicant(s), the initial premium payment has been made and, as of the delivery date of the policy, the health status of the applicant(s) remains insurable under National Guardian Life Insurance Company's underwriting standards.

5. By paying premiums on a basis more frequently than annually, the total premium payable during one year's time will be greater than if the premium were paid annually. That is, the cost of paying annualized periodic premiums will be more than the cost of paying one annual premium.

6. I, the undersigned applicant, acknowledge and represent that I have read the complete application. I, the applicant, represent to the best of my knowledge and belief, that the answers contained in this application are true, complete and correctly recorded.

7. ACKNOWLEDGEMENT - Applicant

I acknowledge delivery / receipt of:

(X) Outline of Coverage (including HICAP notice)

(X) Shopper's Guide - Taking Care of Tomorrow

(X) Long Term Care Insurance Personal Worksheet

(X) Things You Should Know Before You Buy Long Term Care Insurance

(X) Disclosure Statement including Notice of Insurance Information Practices

(X) Notice of Privacy Practices

( ) (If applicable) The "Notice to Applicant Regarding Replacement of Individual Accident and Sickness or Long Term Care Insurance"

_____  3/27/21
Signature of Applicant          Date

_____  12/27/21
Signature of Licensed Agent     Date

ACKNOWLEDGEMENT - Joint Applicant

I acknowledge delivery / receipt of:

(X) Outline of Coverage (including HICAP notice)

(X) Shopper's Guide - Taking Care of Tomorrow

(X) Long Term Care Insurance Personal Worksheet

(X) Things You Should Know Before You Buy Long Term Care Insurance

(X) Disclosure Statement including Notice of Insurance Information Practices

(X) Notice of Privacy Practices

( ) (If applicable) The "Notice to Applicant Regarding Replacement of Individual Accident and Sickness or Long Term Care Insurance"

_____  2/27/21
Signature of Joint Applicant    Date

_____  12/27/21
Signature of Licensed Agent     Date

## SIGNATURES

CAUTION: If your answers on this application are misstated or untrue, National Guardian Life Insurance Company may have the right to deny benefits or rescind your coverage.

Signed at  Huntington Beach CA                          12/29/21
                City and State                              Date

X _____          X _____
Signature of Applicant                  Signature of Joint Applicant

Agent Must Complete Statement on Next Page

 **NGL®**

National Guardian Life Insurance Company (NGL)
Home Office: Madison, WI
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
888.505.2332 • Fax 818.867.2506
www.ngl-essentialltc.com

## CLAIM FOR LONG TERM CARE CLAIMANT'S STATEMENT

### PART A - CLAIMANT INFORMATION

Name **MICHAEL J ELWELL**                    Policy # **2000012932**

Address ▮▮▮ ▮ ▮ City **Huntington Beach** State **CA** Zip **92646**

DOB **07/01/** ▮▮    SSN _____

Email **MVELWELL@GMAIL.COM** Phone # **714 815-6103** Fax # **NONE**

Name of responsible party **Victoria K. Elwell**

Address ▮▮▮ City **Huntington Beach** State **CA** Zip **92646**

Relationship **wife**                    Phone # **714 815-6103**

☒ Power of Attorney (POA)  ○ Legal Guardian  ○ Other _____
**If the responsible party is a POA or Guardian, attach a copy of documents supporting financial and medical authority on the claimant's behalf.**

### PART B - CLAIMANT CONDITION

Cause or Condition requiring long term care **Cognitive impairement caused by Alzheimer disease**

Date symptoms were first noticed **05/01/2022** First date of medical treatment for condition **07/29/2022**

### PART C - ACTIVITIES OF DAILY LIVING (ADL'S)

(Check the appropriate circles that best describes the assistance you/claimant require with each ADL.)

| ADL | | | | | |
|---|---|---|---|---|---|
| **Bathing** | ☒ Independent | ○ Stand-by Assistance | ○ Hands-on Assistance | Date Began _____ | Date End _____ |
| **Continence** | ☒ Independent | ○ Stand-by Assistance | ○ Hands-on Assistance | Date Began _____ | Date End _____ |
| **Dressing** | ☒ Independent | ○ Stand-by Assistance | ○ Hands-on Assistance | Date Began _____ | Date End _____ |
| **Eating** | ☒ Independent | ○ Stand-by Assistance | ○ Hands-on Assistance | Date Began _____ | Date End _____ |
| **Toileting** | ☒ Independent | ○ Stand-by Assistance | ○ Hands-on Assistance | Date Began _____ | Date End _____ |
| **Transferring** | ☒ Independent | ○ Stand-by Assistance | ○ Hands-on Assistance | Date Began _____ | Date End _____ |

### PART D – PHYSICIAN INFORMATION

Physician's Name **Brian D Hitt**

Address **1 Medical Plaza Dr** City **Irvine** State **CA** Zip **92617**

Phone # **714-456-3724** Fax # _____
If you are being treated by other physicians, please provide the name and telephone number on a separate sheet of paper.



01000293

## PART E – HOSPITAL INFORMATION

Were you hospitalized?  ◯ Yes  ⊗ No (If yes, indicate the name, address, and telephone number where you were hospitalized)

Name _____

Address _____ City _____ State ____ Zip _____

Phone # _____ Admission Date _____ Discharge Date _____

Name _____

Address _____ City _____ State ____ Zip _____

Phone # _____ Admission Date _____ Discharge Date _____

## PART F – LONG TERM CARE SERVICES INFORMATION

**Facility Services**

◯ Nursing Home    ◯ Assisted Living    ◯ Residential Care    ◯ Hospice Care    ⊗ Respite Care

~~Other~~ (specify) _Flex day care_

Facility Name _Silverado_ _____ Contact at Facility _Heather Youran_

Address _350 W. Bay Street_ City _Costa Mesa_ State _CA_ Zip _92627_

Phone # _949/631-2212_ Fax # _____

**Date of confinement in Facility**

Admission Date _10/23/2023_ Discharge Date _TBD_

**Home and Community Services**

◯ Home Health Care    ◯ Homemaker Services    ◯ Adult Care    ◯ Hospice Care    ~~Respite Care~~

◯ Other (specify) _N/C_

Home and Community Provider Name _____

Contact at Agency _____

Address _____ City _____ State ____ Zip _____

Phone # _____ Fax # _____

**Date of Home and Community services**

First day of service _____ Last day of service _____ ◯ Ongoing Services

## PART G – OTHER INSURANCE INFORMATION

Are you eligible or enrolled in  Medicare Part A  ◯ Yes  ⊗ No    Medicare Part B  ◯ Yes  ⊗ No

Are you filing for reimbursement of expenses under Medicare?  ◯ Yes  ⊗ No

Are you filing for reimbursement of expenses under Medicaid?  ◯ Yes  ⊗ No

Do you have any other long term care insurance policies?  ◯ Yes  ⊗ No
   (If yes, please provide company name, address, policy number, and daily or monthly benefit amount)

Company Name _____

Address _____ City _____ State ____ Zip _____

Policy # _____ Daily Amount _____ Monthly Amount _____

## CLAIMANT SIGNATURE (Signature required before submitting)

Name _Michael J Elwell_

Signature _Michael J Elwell_ _____ Date _1/4/2024_

CLAIMS INCOMING MAIL: Received on: 01/10/2024 11:00 AM PST   **01000294**
Exhibit C - Page 64

 **NGL.**

National Guardian Life Insurance Company (NGL)
Home Office: Madison, WI
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
888.505.2332 • Fax 818.867.2506
www.ngl-essentialltc.com

## FRAUD NOTICE

Insured Name: <u>MICHAEL J ELWELL</u>

Policy Number: <u>2000012932</u>          Claim Number: <u>20230003</u>

**IMPORTANT: This is a part of the claim form. The laws of some states require us to furnish you with the following fraud notice. Review the fraud notice for your state. If your state is not listed, the following notice applies:**

**Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application or statement of claim for insurance is guilty of a crime and may be subject to fines and confinement in prison.**

**Sign and date this form and return with the claim form.**

**Alaska:** A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

**Arizona:** For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

**California:** For your protection California law requires the following to appear on this form. Any person who knowingly presents false or fraudulent information to obtain or amend insurance coverage or to make a claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado:** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

**Delaware, Florida, Idaho, Indiana and Oklahoma:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

**District of Columbia:** WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

CLAIMS INCOMING MAIL: Received on: 01/10/2024 11:00 AM PST  *01000296*
Exhibit C - Page 66

**Kentucky:** Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine:** It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or a denial of insurance benefits.

**Minnesota:** A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**New Hampshire:** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is subject to prosecution and punishment for insurance fraud as provided in RSA 638:20.

**New Jersey:** Any person who knowingly files a statement of claim containing any false or misleading information is subject to civil and criminal penalties.

**New York:** Any person who knowingly and with intent to defraud any insurance company or other person files an application form for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Ohio:** Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**Oregon:** Any person who knowingly and with intent to injure, defraud, or deceive any insurance company or other person submits an insurance application or statement of claim containing any materially false, incomplete, or misleading information may be committing a crime and may be subject to civil or criminal penalties and may be denied coverage and/or benefits.

**Pennsylvania:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Tennessee, Virginia and Washington:** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

(Name and Signature of person completing this form)

Name: _Victoria K Elwell_

Signature: _Vicki K Elwell_                                    Date: _1/4/2024_

Relationship to claimant (if other than claimant) _Wife_

NLTC-0497 (REV. 10/21)                                                              ELQ 01

## Neuropsychology Review

| | |
|---|---|
| **Insured:** | **Michael Elwell** |
| **Policy #:** | **2000012932** |
| **Claim #:** | **20230003** |
| **Date of Birth:** | **7/1/**████ |
| **Referred By:** | **Kelvin Fong** |
| **Consultant:** | **Lori Folk-Barron, Psy.D., ABPP** |
| **Date of Referral:** | **7/22/2024** |
| **Date of Report:** | **8/7/2024** |

**Reason for Referral:**
Medical records associated with this 61-year-old male insured's claim for long-term care benefits secondary to mild early onset Alzheimer's dementia were forwarded for review. Analysis was requested regarding the insured's diagnosis and whether clinical evidence supported a need for Substantial Supervision due to Severe Cognitive Impairment. Peer to peer contact was requested, if necessary.

**Records Reviewed:**
*All clinical records in the claim file were reviewed for this report. Records contain sleep medicine, primary care, and neurology consultations. Pertinent information regarding the insured's neuropsychological status is summarized below.*

- 7/29/22 Office note from Brian Hitt, MD, Ph.D.  Seen with wife. Have noticed cognitive changes for the last 3 years. Gradual and progressive. First noticed difficulty remembering people's names. "His wife notes that he didn't do well on the cognitive test for long term care insurance." Worked in construction for many years and now has trouble using tools to solve various problems. Friends notice glazed look while they are talking to him; he says he doesn't have anything to add to conversation. Misplacing items more frequently. Difficulty with recent conversations. Difficulty with word finding and expressing thoughts. Uses CPAP for OSA. No dream re-enactment. Mild depression and anxiety symptoms at times. Exercises every day. Independent with all basic ADLs and IADLs. Doing well with driving. Does some gardening and cooking. Retired 3 years ago. 8-10 beers per week. Father had AD in his late 60s, brother had AD with symptoms at 62. MOCA = 21/30 (-1 for visuospatial, -3 for attention, -1 for sentence repetition, -1 for letter fluency, -3 for delayed recall, -2 with category cues, Memory Index score 10/15). Mild deficits in multiple domains with relatively good recall (MIS = 10/15). Vascular risk factors unclear. Atypical pattern and onset for Alzheimer's disease prodrome. No mood or sleep disturbance. Plan for labs, brain MRI, and neuropsych testing.

- 1/3/23 Neuropsychological testing completed by Timothy Obrien, Ph.D.  Unaccompanied to the testing. Reported difficulties with attention and increased forgetfulness. Wife is more concerned about his cognition than he is. Is losing items but is usually able to recall where the lost items are located. More effortful memory for recent events and conversations. May struggle to remember names of those he meets. Attention and focus are biggest problems. Mind wanders. Problems with multitasking. Word finding difficulties that are embarrassing. He uses filler words but is eventually able to generate the desired word. Initially became concerned about his attention and memory 12 to 18 months ago. Gradual onset and progression of symptoms. Misses doses of vitamins and supplements two to three times weekly. Does not take prescription medications. Wife took over responsibility for finances about one year ago. Left the burner of the stove on a couple of times. Is a former ironworker and reported likely toxic exposure. Brain MRI from August 5, 2022 showed mild cerebral volume loss and nonspecific chronic microvascular ischemic change without a pattern to suggest a specific neurodegenerative disorder. Insured reported more irritable mood. More isolated with feelings of sadness and depressed mood. Denied suicidal ideation. Long history of sleep apnea and wears a CPAP device nightly though it does not always stay on through the night. Has not seen a sleep specialist in years.

Behavioral observations notable for slow cognitive processes, but cognition otherwise grossly within normal limits. Performance on objective and embedded measures of effort were described as within expected ranges.

Test results included: *Where possible, this consultant has substituted level of performance labels suggested by the American Academy of Neuropsychology for those used by Dr. Obrien.*
o   Average estimated premorbid intellectual functioning.
o   Below Average auditory attention/digit repetition. Slightly better on digits backward than forward.
o   Exceptionally Low simple visual motor scanning and sequencing.
o   Exceptionally Low processing speed on symbol-digit substitution task.
o   Below Average confrontation naming.
o   Below Average semantic and phonemic verbal fluency.
o   Average visual perception of line orientation.
o   Exceptionally Low word list learning with Exceptionally Low short delay recall and Below Average long delay recall, Average recognition with very elevated false positive errors on recognition task.
o   Low Average immediate and delayed story recall with Exceptionally Low recognition.
o   Average verbal abstract reasoning.
o   Exceptionally Low complex visual motor scanning and sequencing requiring divided attention.
o   Minimal anxiety and depression symptoms endorsed on brief self-report questionnaires.

Dr. Obrien concluded that impaired performance was observed on most cognitive measures, including tasks of working memory, visual motor sequencing, processing speed, expressive language, learning and memory, and executive set shifting. Measures of spatial judgment and verbal abstraction were areas of relative strength. Pattern of memory performance demonstrates deficits in encoding and retrieval. Although memory impairments dominated the cognitive profile, deficits in processing speed, attention, expressive language, and set shifting were apparent. With mild disruption of instrumental activities of daily living, neurodegenerative process is likely. Prominence of memory impairments especially within the areas of encoding and retrieval make Alzheimer's disease the most likely consideration. Diagnosis of Major Neurocognitive Disorder/dementia. Recommendations to limit driving and consider formal assessments of driving. Provide information in writing and encourage family to accompany him to all appointments that will involve distribution of new information.

- 2/3/23 Office note from Brian Hitt, MD, Ph.D.  Seen with wife. Reviewed neuropsych testing. Still misplacing items, having trouble remembering things. Can get anxious about this. Trouble remembering where things are in Huntington Beach where they have lived for many years. Exercises every day, runs and lifts weights. Independent with all basic and instrumental ADL. Wife manages finances. Has trouble managing technology. Still driving, doing well. Does get a bit apprehensive about driving. Does some gardening and cooking. On exam he was oriented times three. Speech was in short phrases with word finding pauses but is fluent and well-articulated, content with some repetition. Brain MRI shows mild central predominant volume loss, bilateral hippocampal volume loss, and mild chronic microvascular ischemic change most prominent in the white matter adjacent to the occipital horns. Assessment was likely Alzheimer's disease. Discussed diagnosis, prognosis, possibility of genetic testing. Start donepezil 5MG QD for one month then 10MG QD. Discussed possible full approval of lecanemab.

- 5/4/23 Office note from Mia Kim, NP, Neurology.  Very vivid dreams after starting donepezil. Wakes up frightened, even from naps/dozing in front of TV. Recognizes as bad dreams and is not as disturbed but wife states he has continued to wake up upset. Positive cognitive effects from donepezil, more organized and more clarity of thought. Independent in ADLs, continues to drive, wife does not

have concerns about driving. MMSE = 23/30. Mild Alzheimer's disease. Discontinue donepezil and start galantamine ER 8 mg qam. Start vitamin B12 supplement.

- 8/11/23 Office note from Brian Hitt, MD, Ph.D.  Follows for early onset mild Alzheimer's disease. Seen with wife. Vivid dream worsened even off donepezil, so his wife did not start galantamine. Will have very frightening dreams but has also started to have confusional arousals, will be very agitated and confused while awake at night. He reports there will be people hanging around that seem like a vapor, and it seems like he is at someone else's party. They will tell him to do something like make a phone call. At one point the people were getting dressed so he got up and got dressed at 2:00 AM. Has had confusional episodes during the daytime while awake as well. Went running and thought he had lost his wallet and phone though he had given them to his wife. Gets very anxious and panicked during those times. Panic is getting more frequent. Episodes can last more than 30 minutes. Wife tries to redirect, and he tries to calm down by lifting weights. Independent with all basic ADL's. Wife manages finances and medication. He has trouble managing technology. Still driving but not very often but is doing well. On exam, oriented in all spheres except month. Speech is mostly short phrases with word finding pauses but is fluent and well-articulated. Some repetition. 5 digits forward, 3 reverse. 2/5 delay recall, 3 with category cues. MOCA MIS = 12/15. Assessment was mild dementia due to early onset Alzheimer's disease. Initially presented with three years of gradually progressive cognitive changes. Neuropsych testing showed prominent memory impairment. MRI showed moderate bilateral hippocampal atrophy. Despite young onset, history, neuropsych, and imaging are most consistent with Alzheimer's. Has a family history of AD. Interested in genetic testing. Lecanemab discussed but would like to hold off on further testing for eligibility. Start prazosin 2 mg qhs for nightmares. Consider antidepressant if anxiety not improving.
- 9/5/23 Office note from Dr. Dyo.  Stopped prazosin. Night terrors are more intermittent. On gabapentin and trazodone. Doing well with CPAP. Often misplacing items in the house. Needs to be prompted to do certain ADLs. Sometimes wakes up and doesn't know he is in his own home. Once a week, not remembering who his family members are. No mental status abnormalities reported. Continue follow with neurology. Last evaluated 8/11/23.
- 10/3/23 Office note from Dr. Dyo.  Intermittent night terrors, on gabapentin and trazodone. Memory currently stable. Has been reducing weight with weightlifting. Normal mental status. Assessment was history of mild early onset dementia, three years of gradually progressive cognitive changes with difficulty remembering names, problem solving and misplacing items. Followed by UCI neurology with higher suspicion for neurodegenerative process such as Alzheimer's disease. MRI showing moderate bilateral hippocampal atrophy.
- 10/9/23 Office note from Dr. Dyo.  Needs forms completed for respite program during the day. Taking gabapentin, prazosin, and trazodone. No mental status abnormalities noted.
- 10/9/23 Office note from Cheryl Ann Hoyme, NP, Sleep Medicine.  Decline in CPAP use, using for 20 years. Takes off at night. Spouse stated that with decreased use she sees increased daytime sleepiness. Oriented x3, normal mental status.
- 11/15/23 Office note from Mia Kim, NP, Neurology.  Follow up of mild dementia. Started trazodone for anxiety, takes prazosin for nightmares. Sleeps 10 pm – 7 am, wakes in night but goes back to bed. Previously would get up, get dressed and go outside. This happens very rarely now. No recent panic attacks. Still hears voices, still has delusions about people coming into the home and taking his belongings. Has not been seeing people in the home. Continues to drive to the gym. Wife is very concerned about safety on the road. Has locked himself out of the car and could not figure out how to manage the situation. Has trouble operating phone. Independent with basic ADLs. Still cooks with help. Started attending day program 3 days per week. Wife noticed improvement in sleep, more engaged, less withdrawn. MMSE = 16/30, -7 for orientation, -4 serial 7's and -3 delayed recall. Mild Alzheimer's disease. Stop driving.
- 12/8/23 Claim Intake.  Called in by wife. Living at home with wife. Wife stated that the insured was diagnosed with Dementia and has been having a hard time sleeping at night. She decided to place him

in adult day care to try and burn off some of his energy during the day. Independent with all ADLs.
No longer driving as of 11/2023. Needs medication management.

- 1/4/24 Claimant Statement signed by insured.  Cognitive impairment caused by Alzheimer's disease.
  Symptoms first noticed 5/1/22, first treated 7/29/22. Independent with all basic ADLs. Respite care
  services started 10/23/23.

- 1/9/24 Office note from Dr. Dyo.  Tested positive for COVID on home antigen test. Onset 1/7/24.
  Has congestion, body aches, cough, sore throat. Already feeling better.  Med list included gabapentin
  300 mg qd and trazodone 50 mg qhs.

- 1/26/24 Office note from Jeffrey Dyo, MD. Sleep still an issue. Often not tolerating CPAP for OSA
  and mask comes off halfway through the night. Not interested in changing sleep meds. Neurologist
  will complete cognitive portion of long term care insurance forms. Meds include trazodone 50 mg
  qhs. On exam, speaking clearly in full sentences. Appropriate mood, affect and responses to
  questions. Assessment was history of mild early onset dementia, three years of gradually progressive
  cognitive changes with difficulty remembering names, problem solving and misplacing items.
  Followed by UCI neurology with higher suspicion for neurodegenerative process such as Alzheimer's
  disease. MRI showing moderate bilateral hippocampal atrophy. Also has obstructive sleep apnea,
  periodic limb movement disorder, can consider gabapentin in the future.

- 2/16/24 Office note from Dr. Hitt.  Wife reported that behavioral symptoms have worsened. Wakes
  up nightly and is disoriented in time, not understanding it is not morning, will want to get dressed and
  make food. Has episodes 3-4 times per week in which he will be very agitated, will hide things
  thinking that people will steal things, will be knocking on doors in the house not knowing it is the
  middle of the night. Says he misses work. Does better if going to Alzheimer's community center,
  doing yard work or riding his bike. Does not seem to be having nightmares, just confusional arousals.
  On one occasion was swinging a rolling pin around, getting angry and lashing out, not clear if he saw
  people that weren't there. Carried a pocketknife in his pajamas. They have a gun safe that his wife
  keeps locked up. Power tools in garage which does not get locked. Wife needs him to be in bed at 9
  pm so she can sleep. Rare agitation during daytime. Genetic testing was negative for gene mutation.
  Did not tolerate cholinesterase inhibitors due to side effects. Exercises daily. Independent with ADLs,
  wife managing finances, meds, and cooking. Insured is not driving. Taking gabapentin and trazodone.
  Unclear if mental status findings are new or old as insured stated date as 6/32/22. Assessment was
  frequent and worsening nighttime confusional arousals with episodes of panic, concerning as he
  continues to be physically quite strong and would be difficult to manage if agitated during a panic
  episode. Has had some physically aggressive behaviors during these but seem only toward internal
  stimuli and never people. Control nighttime environment. Start quetiapine 25 mg at bedtime. Reach
  out to social work for additional care resources.

- 2/16/24 Attending Physician Statement from Brian Hitt, MD, Neurology (Telephone: 714-456-7720;
  Fax: 949-824-1209).  Mild early onset Alzheimer's dementia. Last seen on 2/16/24. Needs adult day
  care. Independent with basic ADLs. Deterioration in functional status expected. Has cognitive
  impairment and needs standby supervision due to periods of disorientation with agitation. Supervision
  first needed on 2/3/23. Supervision provided by wife. Not driving. Cognitive testing has been
  completed. Is not legally competent but retains decision making capacity to understand the nature and
  consequences of assigning POA.

- 2/19/24 Adult Day Care Preliminary Report.  Independent with all basic ADLs. Deterioration in
  functional status expected. Started adult day care services on 10/23/23 through present.

- 4/17/24 Service Plan Conference Sheet.  Adjusting well. Is able to ask for new activities if he doesn't
  like what's scheduled. Going out several days per week with son for activities. Mild impairment
  related to orientation, short term memory, long term memory, vision, communication. Staff
  administers medication. May require reminding or standby assistance for bathing. Is resistant to
  bathing and requires personalized interventions. Remind to wear glasses. Requires verbal reminders,

prompts and cues for grooming and personal hygiene. May need to be reminded and supervisied for dressing changes to ensure appropriate clothing.

- 4/24/24 Long Term Facility Questionnaire.  Admitted to Alzheimer's care on 3/28/24. Independent with all basic ADLs. Deterioration in functional status expected. Supplemental cognitive questionnaire included: insured living on locked memory care unit. Nursing checks occur as needed. Not able to come and go without restriction and requires staff escort outside the facility. Does not drive, does not self-administer meds. Staff have concerns about safety and judgment on a daily basis. Did not complete "needs to be redirected when…" Has not needed 1:1 supervision. Typical activities include physical, social, stress reduction, art, gardening, walking, puzzles, pet therapy, history and news.

- 7/26/24 Attempted telephone consultation with Brian Hitt, MD at 11:50 AM EST. (Telephone: 714-456-7720; Fax: 949-824-1209).  I spoke with Raquel and left a message requesting peer-to-peer contact with Dr. Hitt.

- 7/31/24 Attempted telephone consultation with Brian Hitt, MD at 11:50 AM EST. (Telephone: 714-456-7720; Fax: 949-824-1209).  I contacted the office and chose the callback option available. Jonathan returned my call a short time later. I indicated that this was my second attempt to reach Dr. Hitt. He stated that he would convey my message again and escalate it. At 4:45 PM EST, I received a message from Mia Kim, FNP-C who stated that she managed the insured's care with Dr. Hitt. She stated that the insured was having a lot of behavioral issues and needs 24 hour supervision. She reported that he does not sleep at night. She offered to speak with me further as needed. She offered her phone number (714-478-6807) or her email address (milal@hs.uci.edu), stating that the latter would be an easier way to schedule the call. I emailed her on 8/5/24, and we scheduled a call for 8/7/24 at 11 AM EST.

- 8/7/24 Telephone consultation with Mia Kim, FNP-C at 11:00 AM EST (Telephone: 714-478-6807; Fax: 949-824-1209).  Ms. Kim contacted me at the scheduled time, and I explained my role with LifeCare Assurance. She agreed to speak with me, and we discussed the insured's status for approximately 10 minutes. Ms. Kim confirmed that Dr. Hitt first saw the insured for neurological consultation on 7/29/22 at which time the family reported a history of cognitive changes that reportedly began three years prior in approximately 2019. Ms. Kim was unaware of any previous neurological consultations, and we noted that Dr. Hitt did not describe any prior cognitive screening results, other than the MOCA obtained on 7/29/22. We noted that Dr. Hitt described mild deficits in his cognitive presentation, initially noting that it was atypical for Alzheimer's disease. Neuropsychological testing in January 2023 supported a pattern consistent with Alzheimer's disease. We reviewed the subsequent office visits on 2/3/23, 5/4/23, 8/11/23, and 11/15/23. I noted that the insured began attending Adult Day Care on 10/23/23. Ms. Kim confirmed it was her understanding that these services were sought by his wife at that time to provide daytime stimulation and activity for the insured that would help expend energy and improve his sleep at night. Ms. Kim confirmed that the insured's presentation on 11/15/23 was consistent with mild Alzheimer's disease based on his ADL functioning. We further reviewed his functional status and concurred that his CDR (Clinical Dementia Rating) was likely a 1 at that time, and his FAST (Functional Assessment Scale) was likely a 4. He was independent with his basic ADLs at that time. Ms. Kim added that she recommended no driving as of that visit. Behavioral declines were noted by the time of the insured's follow up with Dr. Hitt on 2/16/24. He was demonstrating very agitated and paranoid behaviors at night and tended to wake others in the home in the middle of the night with disorientation to time and stating he needed to go to work. He was becoming physically aggressive at that point. Ms. Kim saw the insured as an outpatient again in May 2024, after he had been admitted to the locked Memory Care Unit at the ALF. The insured was still getting up at night with agitation, and their office was trying to assist with medication adjustments. Ms. Kim stated that by the May 2024 visit, the insured's functional status had likely declined to a CDR 2 and a FAST stage 5/6. She stated that the insured retains the physical capacity to perform basic ADLs but needs reminders and cues. He is resistant to ADL care at times.

The office had been contacted in June 2024 that the insured had to move to a new facility around that time because the insured had been agitated and aggressive towards a roommate at the original facility. After reviewing the policy definitions, Ms. Kim opined that the insured reached the point of Severe Cognitive Impairment requiring Substantial Supervision at some point between February 2024 and May 2024 which was generally consistent with his admission to the Memory Care Unit. Regarding the etiology of his condition given his young age at onset, Ms. Kim stated that an amyloid PET scan was completed on 7/23/24 and was positive. She stated that the most likely diagnosis is early onset Alzheimer's disease. No genetic testing or other biomarker studies have been completed to her knowledge. I thanked Ms. Kim for her time and indicated that I would be forwarding a letter that summarized our call. She agreed to review it and return it to LifeCare Assurance. The letter was prepared on 8/7/24 and sent to the claims adjuster so that it could be forwarded to Ms. Kim. A copy of the letter was also sent to the claim file.

**Impressions:**
Medical records from Dr. Hitt indicate that at the time of the initial neurological consultation on 7/29/22, the insured and his wife reported a three-year history of cognitive changes that had been gradual and progressive. History revealed that the insured's father had Alzheimer's disease in his late 60's and his brother had symptoms of Alzheimer's disease at age 62. Per the family's report, beginning in approximately 2019, the insured started having difficulty remembering names, and by 2022, he was having difficulty working with construction tools, remembering conversations, and finding words. It is unclear if the insured had cognitive screening prior to his July 2022 consultation with Dr. Hitt, as his wife reported that he did not do well on a cognitive test for long term care insurance. However, his MOCA screening at his initial visit with Dr. Hitt was 21/30 and reflective of mild impairment. His history and test score in the context of his retained instrumental and basic ADLS were suggestive of a Mild Neurocognitive Disorder by July 2022.

A neuropsychological evaluation was completed by Dr. Timothy Obrien in January 2023. During the interview for that evaluation, the insured reported that he became concerned about his attention and memory functioning 12 to 18 months before the evaluation, or between June 2021 and January 2022. The insured reported that his wife took over finance management in approximately January 2022. On neuropsychological testing, the insured demonstrated impaired performance on most tasks with predominant impairments in memory, processing speed, attention, expressive language, and cognitive flexibility. Although IADL changes were just emerging at that time, Dr. Obrien's diagnosis of a Major Neurocognitive Disorder, likely of the Alzheimer's type, was warranted. Upon review of the neuropsychological testing and a brain MRI that showed mild central predominant volume loss, bilateral hippocampal volume loss, and mild chronic microvascular ischemic change most prominent in the white matter adjacent to the occipital horns, Dr. Hitt concluded that the insured's diagnosis was likely Alzheimer's disease.

The insured's cognitive status continued to be characterized as mildly impaired through the remainder of 2023. Some occasional behavioral changes (e.g., increased anxiety and confusional episodes) were beginning to emerge by August 2023. These behaviors appeared to be more intermittent with medication management (gabapentin, prazosin, and trazodone). He began attending an adult day program in late October 2023, and his wife reported, confirmed by Mia Kim, FNP-C, that she started these services to offer daytime stimulation and to help him expend energy that would allow him to sleep better at night. Mental status screening revealed more moderate impairment (MMSE = 16/30) by November 2023.

There was limited medical information between November 2023 and February 2024, but at the time of his 2/16/24 follow up with Dr. Hitt, the insured's behavioral symptoms appeared to have escalated. At that point he was reportedly waking nightly with disorientation and frequent episodes of agitation, paranoia, confusion, and aggressive gestures with some question of visual hallucinations. While he maintained the

physical capacity to perform basic ADLs, his functional status and behaviors were progressively
worsening. Dr. Hitt suggested medication management (quetiapine) and additional care resources via
social work. The insured was admitted to a locked memory care unit as of 3/28/24, and Ms. Kim stated
that significant behavioral dysfunction continued to occur with a need for the insured to transfer facilities
as of June 2024 due to his agitated and aggressive behavior toward another resident. Per Ms. Kim, an
amyloid PET study on 7/23/24 was indicative of Alzheimer's disease, though the report was not available
at the time of this review. Ms. Kim noted that given this history and behavioral decline, the insured
reached a point of needing Substantial Supervision due to Severe Cognitive Impairment at some point
between February and May 2024.

Overall, the totality of the clinical information supports an approximate five-year history of cognitive
declines that are currently consistent with a Major Neurocognitive Disorder Due to early onset
Alzheimer's Disease with behavioral disturbance. Given his reported family history of early onset
Alzheimer's disease in his father and brother, there is a question as to whether he is demonstrating a
familial variant of the disease.  The insured's cognitive impairments appear to be at least of moderate
severity, and his reported behaviors since February 2024 raise concerns about his safety and the safety of
others in the context of his dementia. Thus, there is reasonable support for the presence of Severe
Cognitive Impairment requiring Substantial Supervision as of 2/16/24 and ongoing.

Thank you for referring this claim for neuropsychological review. I would be happy to discuss the
findings of my review or to examine any additional information that might become available for this
insured. Please do not hesitate to contact me. This review does not constitute a Forensic Psychological or
Neuropsychological Evaluation of the insured. At no point in the review process did I have direct contact
with the insured.

*Lori Folk-Barron, PsyD ABPP-CN*

Lori Folk-Barron, Psy.D., ABPP
Board Certified in Clinical Neuropsychology
Neuropsychology Consultant to Lifecare Assurance



August 22, 2024

VICTORIA K ELWELL
MICHAEL J ELWELL
████████████████

HUNTINGTON BCH, CA 92646

| Claimant: MICHAEL J ELWELL |
| Policy No: 2000012932 |
| Claim No: 20230003 |

08/22/2024

Dear Mr. & Mrs. Elwell:

We completed our review of the information in the claim file and determined that Insured Michael Elwell satisfies the eligibility requirements of the policy as of 2/16/2024. In order to qualify for benefits under his policy, the Insured must receive qualified care from an approved provider and satisfy any applicable Elimination Period.

The policy has a 90-day Elimination Period and the current daily benefit is $190.96. The policy has a Lifetime benefit period.

As part of our ongoing claim evaluation, annual certification of your Chronic Illness is required per your Policy and federal law. Additional information may be requested which may consist of, but may not be limited to, updated medical records from your treatment provider(s) and/or a physical examination. We will advise you when and what additional information may be needed in connection with your ongoing claim.

The medical records prior to 2/16/2024 did not indicate that the insured was Chronically Ill. The records noted that prior to that date, Mr. Elwell's symptoms were considered mild. His initial MOCA score of 21/30 demonstrates a mild cognitive impairment. Our medical consultant performed a peer-to-peer call with Mia Kim, NP on 8/7/2024. During that call, Ms. Kim, NP confirmed that as of 11/15/2023, Mr. Elwell's presentation was consistent with mild Alzheimer's disease. His Clinical Dementia Rating was likely a 1 and Functional Assessment Scale a 4. He was still independent with Activities of Daily Living at that time and may have still been able to drive at that time. These records do not reflect a severe level of Cognitive Impairment.

It was not until 2/16/2024 that it was documented in the medical records that Mr. Elwell had more severe behavioral symptoms, such as waking nightly with disorientation and frequent episodes of agitation, paranoia, confusion, and aggressive gestures, which collectively supported a finding of Chronic Illness.

The policy states in part:

**Eligibility for Payment of Benefits**

While this Policy is in force, You will be eligible for Payment of Benefits if You are certified to be a Chronically Ill individual. This means that within the previous twelve (12) months, a Licensed Health Care Practitioner, who is independent of Us, has provided a written Certification that You require:

• Substantial Assistance from an individual to perform at least two (2) Activities of Daily Living (Bathing, Continence, Dressing, Eating, Toileting, Transferring) due to the loss of functional capacity for a period expected to last at least ninety (90) days; or

• Substantial Supervision when You have a Severe Cognitive Impairment to protect You or others from threats to health and safety.

A Licensed Health Care Practitioner, who is independent of Us, must develop and provide Us with a written Plan of Care after personally examining You.

The expected ninety (90)-day period for loss of functional capacity does not establish an additional waiting period beyond any Elimination Period selected before benefits become payable.

You have the option of submitting a Certification to Us or submitting a notice of claim and requesting that We conduct the assessment to determine if You are a Chronically Ill individual. If You request that We conduct the assessment, We shall provide an independent Licensed Health Care Practitioner to conduct the assessment.

Upon Certification that You are a Chronically Ill individual, the Licensed Health Care Practitioner after personally examining You shall develop and provide Us with a written Plan of Care.

**Severe Cognitive Impairment** means a loss or a deterioration in intellectual capacity that is comparable to (and includes) Alzheimer's disease and similar forms of irreversible dementia, and is measured by clinical evidence and standardized tests that reliably measure impairment in the individual's:

• short-term or long-term memory;
• orientation as to people, places, or time; and
• deductive or abstract reasoning.

**Substantial Supervision** means continual supervision (which may include cueing by verbal prompting, gestures or other demonstrations) by another person that is necessary to protect the severely cognitively impaired individual from threats to his or her health or safety (such as may result from wandering).

We are following-up with Silverado's Adult Day Care for their Adult Day Care license and invoices and care logs for the period of 2/16/2024 through 3/27/2024.

Silverado Senior Living meets the policy definition of Residential Care Facility. We are following-up with it to verify the insured's residency from 3/28/2024 through discharge date and request all the invoices for that time period.  Once that information is received, we will review it and determine whether any of those days would be allocated to  the Elimination Period.

We also wish to inform you that we have been and will continue to consider your claim under a full reservation of rights. After you submitted this claim in December of 2023, we obtained information that suggested that Mr. Elwell had been experiencing symptoms of cognitive impairment for some time, and that he may not have been entirely forthright or truthful during the policy application process in December of 2021. Questions have arisen concerning whether Mr. Elwell's conduct justifies us denying his claim for benefits and rescinding the policy.

As part of the application process, Mr. Elwell filled out the form application requesting certain background and medical information which he signed under the following advisement:

> 6. I, the undersigned applicant, acknowledge and represent that I have read the complete application. I the applicant, represent to the best of my knowledge and belief, that the answers contained in this application are true, complete, and correctly recorded.

Under his signature can be found this warning:

**CAUTION: If your answers on this application are misstated or untrue, National Guardian Life Insurance Company may have the right to deny benefits or rescind your coverage.**

In addition to responding to the questions asked on that form application, he also provided a recorded statement during which he answered certain specific questions about his medical history and current status.

There were a number of problems with the answers Mr. Elwell provided on the application, including:

> 1)    He did not disclose that his brother developed Alzheimer's disease at the age of 62;

> 2)    He did not accurately disclose the correct age at which his father developed Alzheimer's disease (it was 65, not 75 (or "mid-70's") as he reported);

> 3)    He falsely denied ever applying for long-term care insurance previously, which application had been denied;

> 4)    During the telephone interview, Mr. Elwell said he had "no complaints" and "nothing health-wise in the last five years." In fact, about seven months after he signed that application he started treating with a doctor who documented multiple times that Mr. Elwell had been

suffering from cognitive issues for at least two and a half years before he filled out the application.

Had accurate information been provided by Mr. Elwell during the application process, our underwriters would have rejected the application and this policy would never have been issued.

Should you submit the required information that would qualify you to begin receiving benefits under this policy, any such benefits will be paid under a full reservation of rights to deny this claim and rescind the policy, and seek reimbursement of all benefits paid.

It is our intent to file a complaint in the federal court in the Central District of California requesting the court determine the parties' rights and obligations under this policy. Should the court rule in our favor, all future payments and policy benefits will terminate and we may seek reimbursement of all benefits previously paid.

If you require any assistance or have questions regarding the Long Term Care claim, please contact the undersigned.

Sincerely,

*Sue Sanders*

Sue Sanders
Claims Manager
(888)505-2332 ext. 2321